Antonio Darnell **ROBINSON**,
Petitioner,

v.

John **IGNACIO**, Warden, Respondent.

No. 02–17298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 2003.

Filed March 10, 2004.

1046

John C. Lambrose, Assistant Federal Public Defender, Las Vegas, NV, for the petitioner.

John M. Warwick, Deputy Attorney General, Carson City, NV, for the respondent.

Before: HAWKINS, THOMAS, and CLIFTON, Circuit Judges.

CLIFTON, Circuit Judge.

This case requires us to consider (1) whether the application of a Nevada state procedural default bar also serves under the adequate and independent state ground doctrine to preclude our consideration in a federal habeas proceeding of an alleged Sixth Amendment violation, and (2) whether it is a violation of "clearly established federal law" for a trial court to deny a defendant's request for counsel at sentencing simply because of his prior waiver of the right to counsel at trial.

Nevada state prisoner Antonio Darnell Robinson appeals the District Court's denial of his 28 U.S.C. § 2254 petition, in

which he challenges the state sentencing proceedings that adjudicated him a habitual criminal and sentenced him to life without parole. Robinson argues that the state trial court violated his Sixth Amendment right to counsel when the court denied his timely request to be represented during sentencing. Before we reach this issue, we must determine whether Nevada Revised Statute (NRS) § 34.810(1)(b)(2) procedurally bars Robinson from asserting his Sixth Amendment claim in this § 2254 petition. Because we believe that the claim is not barred, and because we hold that under clearly established federal law, the state trial court's denial of Robinson's request did violate the Sixth Amendment, we reverse and direct the district court to grant the writ and remand Robinson's case for re-sentencing.

## I. BACKGROUND

In 1992, the State of Nevada charged Robinson with robbery with the use of a deadly weapon and with conspiracy to commit robbery. The State's complaint alleged that Robinson wielded a knife while he and a co-conspirator robbed a convenience store. Following a jury trial in September 1992, Robinson was found guilty on both counts. After the guilty verdict, Robinson filed a motion for a new trial on the grounds that he had not been afforded a probable cause hearing on the conspiracy charge. The trial court granted Robinson a new trial. The State then filed an amended information which omitted the conspiracy charge, but added a charge alleging that Robinson was a habitual criminal.

Before the second trial, the trial court granted Robinson's request to represent himself, after extensively canvassing him on the issue. The trial court ordered the attorney who represented Robinson in the first trial, Robert Witek, to act as "stand-by" counsel in the second trial. After a two-day trial on November 23 and 24, 1992, Robinson was again found guilty of robbery with the use of a deadly weapon.

One week prior to sentencing, on or around December 9, 1992, Robinson (who was then in custody) allegedly sent a letter to the trial court, requesting that an attorney be appointed to represent him during his sentencing hearing. The letter proposed a specific attorney, Jennifer Kafchinski. The trial court did not respond to this written request, however, and it is unclear whether this letter was actually received.

During the sentencing hearing on December 16, Robinson again brought his request for appointment of counsel before the court, stating that he could not adequately defend himself due to his unfamiliarity with the sentencing standards of the habitual criminal statute. The trial court denied the request, reasoning:

I note at the time Mr. Robinson decided to represent himself I canvassed at great length, discussed each charge in this case ... the consequences of each charge and the nature of the sentence the Court could impose.... Based upon the extensive canvass of the Court and contrary to my suggestions to Mr. Robinson, he elected to represent himself in this proceeding. And therefore, based upon all those circumstances, the request for a continuance is denied.

The sentencing continued with Robinson representing himself and with Kafchinski acting as advisory counsel. The court did permit Kafchinski to make a general argument on Robinson's behalf for mitigation of the sentence, but Kafchinski did not challenge the government's proffered prior convictions. The court ultimately found Robinson to be a habitual criminal and sentenced him to life in prison without the possibility of parole.

### A. The Direct Appeal Proceedings

On June 24, 1993, Robinson filed his direct appeal to the Nevada Supreme Court. In that appeal, Robinson presented two claims: (1) the trial court erred when it adjudged him to be an habitual criminal, and (2) the trial court abused its discretion in sentencing him to life in prison without possibility of parole. The appeal was submitted without oral argument in February 1994. In June 1994, the Supreme Court granted Robinson's motion for leave to file a supplemental brief. Robinson used this opportunity to present several new claims, but he again failed to raise a Sixth Amendment claim based on the trial court's denial of his request for counsel at sentencing.

Although the Nevada Supreme Court did not deny Robinson's direct appeal until more than two years later in August 1996, Robinson did not again attempt to add claims to his direct appeal.

### B. The State Habeas Proceedings

In September 1993, while Robinson's direct appeal was still pending in the Nevada Supreme Court, he filed a pro se petition for writ of habeas corpus in the Second Judicial District Court for the State of Nevada. In March 1994, Robinson filed a second pro se habeas petition in the same court. Both petitions presented nearly identical issues and in both petitions, Robinson failed to raise a Sixth Amendment denial of counsel claim.

In March 1994, before the Second Judicial District Court had addressed the merits of Robinson's habeas petition, Robinson requested that District Judge Brent T. Adams—the same judge who had denied Robinson's request for counsel at sentencing—recuse himself from hearing

Robinson's petition. In October 1994, this request was granted and the case was transferred to another department of the court. After his case was transferred, Robinson, through his new court-appointed counsel Joseph Plater, filed Supplemental Points and Authorities in support of his habeas petition on December 5, 1994 ("December 1994 Supplement"). The December 1994 Supplement focused on just three claims, including a denial of counsel claim. With regard to the denial of counsel claim, the December 1994 Supplement alleged in relevant part:

> It was error to deny Robinson counsel at sentencing. Although Mr. Robinson may have once elected to represent himself, he clearly relinquished that right in timely fashion before sentencing in his case. His right to have counsel represent him at sentencing was absolute and guaranteed. Therefore, Robinson would respectfully request that he be granted a new sentencing with appointed counsel.

In response, the State filed a motion to dismiss, arguing that Robinson's December 1994 Supplement "is in fact an additional claim for relief" and "should be denied because petitioner has not demonstrated good cause for failure to raise the issue of prosecutorial vindictiveness [1] in the first petition for writ of habeas corpus." The State did not, however, argue that Robinson's denial of counsel claim was similarly barred.

Robinson opposed this motion to dismiss, but the court never ruled on the motion, instead allowing the parties to enter into a stipulated agreement. In July 1996, the court approved this stipulation and in its order stated:"[T]he parties stipulated that the only issues properly before

---

[1] Prosecutorial vindictiveness was one of the other claims in the December 1994 Supplement that Robinson raised along with his denial of counsel claim.

the Court were those presented in [the December 1994 Supplement] prepared by Attorney Joe Plater. In exchange, the State agreed not to seek any relief arising from the alleged untimely nature of the supplement." The State acknowledged this stipulation in its Answer to Robinson's December 1994 Supplement, and thus, when the State denied Robinson's claim that he was improperly denied counsel at sentencing, it notably refrained from raising any procedural defenses.

In July 1996, the Second Judicial District Court conducted an evidentiary hearing in order to address the claims raised in the December 1994 Supplement, and accordingly conducted an inquiry into whether Robinson had submitted a timely request to be represented at his sentencing hearing. During this inquiry, Judge Adams testified that he could neither confirm nor deny that he received the letter that Robinson purportedly sent him on December 9, 1992. The court, however, ultimately concluded that it would assume that the letter was sent "because Robinson verbally requested appointment of counsel during the sentencing hearing, and made reference to the letter."

Despite finding that Robinson's letter had been sent, the Second Judicial District Court nonetheless denied Robinson's petition on July 30, 1996. In doing so, the court concluded that "to the extent the issue [was] reviewable," the trial court's denial of Robinson's request for counsel at sentencing did not constitute an abuse of discretion. The court reasoned: "Judge Adams had the discretion to allow or refuse to allow Robinson to be relieved of the decision to waive the right to counsel. When considering the initial waiver, the

timing of the request for counsel and the lack of any reasons given for the request, this Court finds no abuse of discretion in denying the request for counsel." (internal citations omitted).

Robinson appealed the court's denial of his habeas petition to the Nevada Supreme Court, re-asserting his denial of counsel claim. The Supreme Court refused to address the claim on the merits, concluding instead that pursuant to NRS § 34.810(1)(b)(2),[2] Robinson "waived these claims by failing to present them on direct appeal." In holding the claim barred, the Supreme Court never discussed the court-approved stipulation that the parties had agreed upon. The court then rejected Robinson's remaining claims and dismissed his petition.

### C. Federal Habeas Proceedings

Robinson filed the current § 2254 petition with the United States District Court for the District of Nevada in August 1999. In Ground Ten of his petition, Robinson again claimed that his Sixth Amendment right to the effective assistance of counsel had been violated because the state court denied his request for appointment of counsel at his sentencing hearing. The State moved to dismiss this claim pursuant to the adequate and independent state grounds doctrine, emphasizing that Robinson's failure to raise the claim on direct appeal prompted the Supreme Court of Nevada to rule that NRS § 34.810(1)(b)(2) procedurally barred the claim.

The District Court disagreed, holding that the Nevada Supreme Court's application of NRS § 34.810(1)(b)(2) did not constitute an "adequate and independent" state ground for denying relief. The Dis-

---

**2.** NRS § 34.810(1)(b)(2) provides in relevant part: "The court shall dismiss a petition if the court determines that ... [t]he petitioner's conviction was the result of a trial and the grounds for the petition could have been ... [r]aised in a direct appeal or a prior petition for a writ of habeas corpus or post-conviction relief...."

trict Court relied on the Nevada Supreme Court's decision in *Pellegrini v. State of Nevada,* 117 Nev. 860, 34 P.3d 519, 534–35 (2001), which held that courts generally *will not* review ineffective assistance of counsel claims on direct appeal and, thus, such a claim is *not waived* by failing to raise it in that context.

Citing *United States v. Robinson,* 913 F.2d 712, 718 (9th Cir.1990), the District Court then denied Robinson's habeas petition on the merits, rejecting Ground Ten even as it recognized that "the court must give due consideration to a subsequent motion for appointment of counsel at a critical stage in the proceedings." The court first reasoned that unlike all of Robinson's other motions to the court, the copy of the December 9th letter requesting counsel was not properly captioned and file-stamped, and thus it was doubtful that the trial judge ever received Robinson's letter requesting counsel at sentencing. The court then concluded:

> Despite a strong warning from the court that it was not in his best interest, Robinson insisted upon self-representation. At the sentencing hearing, Robinson waited until after the state had presented its case in support finding [sic] him a habitual criminal and the court had rejected several of his objections before asking the court to appoint counsel and grant a continuance. Given the timing of his change of heart and his previous efforts to delay proceedings, the court had sufficiently compelling reasons to deny Robinson's request for counsel at sentencing.

Robinson now appeals the District Court's denial of his petition for federal habeas relief, alleging that the district court erred in determining that his Sixth Amendment right to counsel was not violated when the state trial court denied his timely request for counsel at sentencing.

## II. DISCUSSION

### A. The State Procedural Bar

When Robinson filed his federal habeas petition in the District Court, the State moved to dismiss Robinson's denial of counsel claim pursuant to the adequate and independent state grounds doctrine. According to the State, the Nevada Supreme Court's determination that Nevada's procedural default doctrine procedurally barred this claim constitutes an adequate and independent decision based on state law and thus precludes further federal review.

■■■ Under the adequate and independent state grounds doctrine, a federal court will not review a question of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Vang v. Nevada,* 329 F.3d 1069, 1072 (9th Cir.2003) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Nevada's procedural default doctrine is a specific application of this adequate and independent state grounds doctrine. It bars federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Calderon v. United States Dist. Court,* 96 F.3d 1126, 1129 (9th Cir.1996) (quoting *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546).

■■■ Robinson first argues that his claim is not procedurally barred because the state waived its procedural defense when it stipulated during the state habeas proceedings that it would not move to dismiss, based on procedural grounds, any of the three claims contained in Robinson's December 1994 Supplement. Although the

record confirms that the State agreed to a court-approved stipulation which explicitly stated that Robinson's denial of counsel claim was properly before the court and could be considered on the merits, the Nevada Supreme Court has recently interpreted NRS § 34.810's "mandatory statutory language" to mean that "a stipulation by the parties cannot empower a court to disregard the mandatory procedural default rules." *State v. Haberstroh,* 69 P.3d 676, 681 (Nev.2003). Therefore, Robinson's stipulation with the State cannot, in and of itself, save Robinson's denial of counsel claim from procedural default.

■ Not every state decision that is based on a state procedural rule will actually preclude federal review, however. For the procedural default doctrine to apply, the state procedural bar must be both "adequate" and "independent." A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon,* 96 F.3d at 1129 (quoting *Wells v. Maass,* 28 F.3d 1005, 1010 (9th Cir.1994)). A state procedural bar is "independent" if the state court "explicitly invokes the procedural rule as a separate basis for its decision." *Vang,* 329 F.3d at 1074. Moreover, even if the state procedural rule is adequate and independent, a federal court may still review the merits of the defaulted claim if the prisoner can demonstrate that the default is excused. "Procedural default is excused if 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice.' " *Boyd v. Thompson,* 147 F.3d 1124, 1126 (9th Cir.1998) (quoting *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546).

Accordingly, Robinson alleges that the state procedural rule was not "adequate," and that even if it was "adequate," his default should be excused due to "cause and prejudice." We address his "cause and prejudice" argument first.

■ It is Robinson's contention that the court-approved stipulation played a significant role in his procedural default and thus established "cause" for his default. "A showing of cause 'must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [prisoner's] efforts to comply with the State's procedural rule.' " *Pizzuto v. Arave,* 280 F.3d 949, 975 (9th Cir.2002) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). "Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." *Id.* (citing *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).

The Nevada Supreme Court's *Haberstroh* decision provides direct support for Robinson's argument. The *Haberstroh* court, despite concluding that the state's stipulations could not save the prisoner's claims from NRS § 34.810's procedural bar, nonetheless granted those claims after holding that the prisoner's reliance on the state's stipulations established "cause."[3] In so holding, the Nevada Supreme Court stated in relevant part:

---

**3.** The Nevada Supreme Court was applying Nevada's "cause and prejudice" analysis in order to determine whether Haberstroh's claims could be reviewed despite being procedurally barred. Nevada's "cause and prejudice" analysis and the federal "cause and

prejudice analysis" are nearly identical, as both require "cause for the default and actual prejudice as a result." *Boyd,* 147 F.3d at 1126. *Cf. State v. Haberstroh,* 69 P.3d 676, 681–82 (Nev.2003).

We realize that the stipulation here preceded our decision [that application of the procedural bar is mandatory] and that [prisoner] relied upon the stipulation and did not present evidence or argument in regard to cause for raising his claims. Under the circumstances of this case, we conclude that *we can treat the stipulation as establishing the facts to show cause* to raise the relevant claims but allowing consideration of the claims' merits only to determine the question of prejudice. This approach leaves the procedural default rules in effect and allows us to accept the stipulation and decide the appeal.

*Haberstroh*, 69 P.3d at 681–82 (internal footnotes omitted) (emphasis added).

We find the *Haberstroh* court's reasoning persuasive, and note that Robinson explicitly stated that his reliance on the stipulations prevented him from presenting any argument in regard to "cause" during the state habeas proceedings. Indeed, treating the stipulation "as establishing the facts to show cause" is even more warranted in Robinson's case than in Haberstroh's. In *Haberstroh*, the Nevada Supreme Court affirmed Haberstroh's sentence on direct appeal as early as 1989 and had denied him post-conviction relief by 1993. *Haberstroh*, 69 P.3d at 680. It was not until after both these proceedings had concluded, that Haberstroh finally filed his state habeas petition in 1997 in which he attempted to raise his new claims. *Id.* The State informed the court that it had "substantial evidence" to present on "procedural default issues" but stipulated that the new claims could be adjudicated on the merits in the interest of fairness. *Id.* Despite the fact that these stipulations came long after Haberstroh had already procedurally defaulted, the Nevada Supreme Court nonetheless concluded that the stipulation constituted "cause" because Haberstroh "relied upon the stipulation and did

not present evidence or argument in regard to cause." *Id.* at 681.

Robinson filed his state habeas petition and entered into the stipulated agreement all while his direct appeal was still pending. Furthermore, though his direct appeal was filed in June 1993, Robinson could have moved the Nevada Supreme Court for leave to amend his direct appeal claims at any time. *See* Nev. R.App. P. 28(c). Robinson actually made one such motion in June 1994, and the Nevada Supreme Court granted him leave to file a supplemental brief—a brief that notably included several new claims. Robinson did not make a similar attempt to add a denial of counsel claim, even though his direct appeal was still pending when he filed the December 1994 Supplement containing his denial of counsel claim. His direct appeal would not conclude until August 1996, twenty months later. He could have sought to amend his direct appeal, if he had understood it was necessary to do so in order to raise the denial of counsel issue. It is thus a distinct possibility that Robinson's reliance on the stipulations caused not only his failure to "present evidence and argument in regard to cause," as was the case in *Haberstroh*, but also caused his failure to add the denial of counsel claim to his direct appeal in the first place.

Indeed, an examination of the record strongly implies that the State's actions throughout the state habeas proceedings led Robinson to believe another amendment of his direct appeal claims was not necessary. For example, when Robinson initially filed his December 1994 Supplement in order to add three new claims to his state habeas petition, the State initially responded with a motion to dismiss, in which it stated:

The 'supplemental points and authorities' ought to be treated as a successive petition. Then, the successive petition should be denied because petitioner has not demonstrated good cause for failure to raise the issue of *prosecutorial vindictiveness* in the first petition for writ of habeas corpus. *See* NRS 34.810. Therefore, respondent moves this court *to strike* or dismiss the "supplemental points and authorities" filed by petitioner.

(Emphasis added).

By mentioning only the prosecutorial vindictiveness claim, and simultaneously failing to address the denial of counsel claim, the State may have signaled to Robinson that it had waived its procedural defenses for the latter claim. The State's subsequent stipulation that all the claims in the December 1994 Supplement were properly before the court likely led Robinson to adopt the mistaken, though reasonable, belief that he need not amend his direct appeal in order to preserve his denial of counsel claim. Robinson simply could not have known that the court-approved stipulations would not save his claims from procedural default because *Haberstroh* was not decided until 2003. In fact, it was not until the Nevada Supreme Court decided *sua sponte*[4] that Robinson's claim had procedurally defaulted did Robinson realize his mistake.

Moreover, we note that when the Nevada Supreme Court ruled that NRS § 34.810 procedurally barred Robinson's claims, it apparently was unaware of the stipulated agreement between the State and Robinson. This is hardly unexpected since Robinson had no reason to bring the stipulations to the court's attention due to his belief that procedural bars would not be at issue. Nor did the Supreme Court

conduct a "cause and prejudice" analysis before dismissing Robinson's claims—an omission that also can be attributed to Robinson's reliance on the stipulations. Had the Supreme Court been properly informed, we believe it would not have summarily dismissed Robinson's claim as being procedurally barred. We can assume that it would have instead held, as it did when faced with less compelling circumstances in *Haberstroh*, that the stipulations established "cause" for Robinson's procedural default.

For the foregoing reasons, we believe that Robinson's reliance on the State's actions and on the stipulations was reasonable, and that these objective external factors contributed to his failure to add his denial of counsel claim to his direct appeal. Because we do not think it is appropriate to forfeit an individual's constitutional claims when a significant factor in that default was the State's actions, we hold that Robinson has successfully established "cause" for his delay in raising his denial of counsel claim.

 Having found that Robinson has established "cause," we also conclude that "actual prejudice" resulted from the alleged violation of Robinson's right to counsel. When conducting a "prejudice" analysis in the context of the situation at hand, this court applies the standard outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See e.g., Vansickel v. White*, 166 F.3d 953, 958–59 (9th Cir.1999). In *Strickland*, the Supreme Court held that a habeas petitioner must demonstrate "a reasonable probability that, but for … errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Prejudice is pre-

---

4. The State, like Robinson, apparently believed the stipulations were valid and did not move the Nevada Supreme Court to dismiss Robinson's denial of counsel claim.

sumed when there is an "[a]ctual or constructive denial of the assistance of counsel altogether." *Id.* at 692, 104 S.Ct. 2052.

Although we recognize that *Strickland* dealt with the denial of counsel at trial and not at sentencing, we note that the Supreme Court has recognized that sentencing is a critical stage of the criminal proceeding. *See Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Thus, we see no reason why *Strickland's* presumption of prejudice should not also be extended to situations where a defendant is denied counsel at sentencing. *See e.g., Penson v. Ohio,* 488 U.S. 75, 88–89, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (holding that the presumption of prejudice must be extended to the denial of counsel on appeal because the appeal is a critical stage of the criminal proceeding); *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (holding that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial").

Because we conclude that Robinson has successfully established "cause and prejudice," we hold that the U.S. District Court correctly reached the merits of Robinson's denial of counsel claim.[5] We now proceed to review the District Court's decision to deny that claim.

### B. Denial of Counsel

#### 1. Standard of Review

 The U.S. District Court's decision to deny Robinson's habeas petition is reviewed de novo. *Bean v. Calderon,* 163 F.3d 1073, 1077 (9th Cir.1998). Its findings of fact are reviewed for clear error. *Lopez v. Thompson,* 202 F.3d 1110, 1116 (9th Cir.2000) (en banc). Because Robinson's habeas petition was filed after the Anti–Terrorism and Effective Death Penalty Act's ("AEDPA") effective date of April 24, 1996, the statute's provisions apply. *Rios v. Rocha,* 299 F.3d 796, 799 n. 4 (9th Cir.2002).

Under AEDPA, a habeas corpus petition cannot be granted unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

 When applying these standards, the federal court should review the "last reasoned decision" by a state court, which in the case at hand is the opinion of the Second Judicial District Court for the State of Nevada, filed on July 30, 1996. *See Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir.2002). Therefore, in order to determine whether the U.S. District Court erred in upholding the Second Judicial District Court's decision to reject Robinson's denial of counsel claim, we must decide whether the Second Judicial District Court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law."

#### 2. Clearly Established Federal Law

 AEDPA's "clearly established law" requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S.

---

**5.** We do not reach the issues of whether Nevada's procedural default bar was "adequate" during the period of Robinson's alleged default, or whether under *Pellegrini v. State,* 117 Nev. 860, 34 P.3d 519, 534–35 (2001), Nevada's procedural default doctrine did not bar Robinson's denial of counsel claim.

Supreme Court decisions. *See Williams v. Taylor*, 529 U.S. 362, 381, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, if the Supreme Court has not "broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Id.* Nonetheless, the Supreme Court has also explicitly refused to limit "the federal courts' independent interpretive authority" with respect to applying Supreme Court doctrine. *Id.* at 382, 120 S.Ct. 1495.

The Supreme Court's Sixth Amendment jurisprudence has long recognized that a criminal defendant's right to counsel is a fundamental component of our justice system. *See Cronic*, 466 U.S. at 654, 104 S.Ct. 2039. Without the aid of counsel, a defendant may be unable to prepare an adequate defense and though "he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *see also Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Though the right to counsel was originally a trial right, the Supreme Court has extended the right to various "critical" stages of the prosecution and has held that sentencing is one such "critical" stage. *See Gardner*, 430 U.S. at 358, 97 S.Ct. 1197; *Mempa v. Rhay*, 389 U.S. 128, 134–37, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

Thus, whenever a defendant is denied counsel during sentencing, the Supreme Court has uniformly found constitutional error without any showing of prejudice. *See Cronic*, 466 U.S. at 659, 104 S.Ct. 2039. *See also Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (recognizing that the right to counsel is "so basic to a fair trial that [its] infraction can never be treated as harmless error").

Our analysis in the present case is complicated, however, by the fact that Robinson was not denied counsel outright, but had waived his right to counsel prior to trial. Indeed, the Supreme Court has made it clear that once a defendant has made such a waiver, he must bear the consequences without complaint though he conducted his own defense to his own detriment. *See Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Robinson does not dispute either the validity of his waiver or his conviction at trial. Instead, he alleges that the state trial court should have allowed him to revoke his waiver and should have appointed him counsel when he requested representation prior to his sentencing.

Although the Supreme Court has never explicitly addressed a criminal defendant's ability to re-assert his right to counsel for sentencing after a previous waiver of that right during trial,[6] its si-

---

**6.** Instead, the Court has chosen to deny certiorari on at least two occasions when presented with an opportunity to address this issue. First in *Grandison v. Maryland*, 305 Md. 685, 506 A.2d 580, *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986), the Court of Appeals of Maryland upheld the trial court's unexplained denial of a request for counsel at sentencing, after the right had been originally waived at trial. The United States Supreme Court refused to address the issue of

whether this denial violated the defendant's Sixth Amendment rights. Justice Marshall, with whom Justice Brennan concurred, strongly criticized the denial of certiorari, contending:

> The waiver of the right to counsel at the first "trial" on guilt or innocence should therefore have no more bearing on a defendant's right to counsel in *the sentencing phase* than it would on that defendant's right to counsel in a separate trial on relat-

lence on this particular issue need not prevent us from identifying and applying the general governing principles to the case at hand. In *Williams v. Taylor*, 529 U.S. at 382, 120 S.Ct. 1495, the Court explained that under AEDPA, "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." As *Williams* points out, a rule is designed for the specific purpose of evaluating a myriad of factual contexts, and thus a novel factual situation may nonetheless be dictated by Supreme Court precedent. *Id.* (quoting *Wright v. West*, 505 U.S. 277, 308–09, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (concurring opinion of Justice Kennedy)).

▌ The Ninth Circuit has elaborated upon these interpretive principles. We have recognized that "because of the 1996 AEDPA amendments, [we] can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue." *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir.2000). But Ninth Circuit precedent "may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and may also help us determine

what law is 'clearly established.'" *Id.; see also Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir.1999) ("In determining whether a state court's decision involved an unreasonable application of clearly established federal law, it is appropriate to refer to decisions of the inferior federal courts in factually similar cases"). Therefore, when faced with a novel situation we may turn to our own precedent, as well as the decisions of other federal courts, in order to determine whether the state decision violates the general principles enunciated by the Supreme Court and is thus contrary to clearly established federal law.

In *Menefield v. Borg*, 881 F.2d 696 (9th Cir.1989), this court addressed a defendant's ability to re-assert his right to counsel following a waiver of that right during trial. A request by the defendant in that case to be represented at a motion for a new trial was denied by the trial court. *Id.* at 697. In assessing the trial court's conduct, we first emphasized that the Supreme Court has repeatedly held that a defendant's right to counsel is absolutely fundamental to the fair administration of our justice system and has accordingly extended this right to all critical stages of the criminal prosecution. *Id.* at 698. Recognizing that the Supreme Court has

---

ed crimes. It should under no circumstances irrevocably bind a defendant in *the sentencing phase*. ... Even at midtrial in a non-bifurcated proceeding, a trial court's unexplained refusal to permit a defendant to revoke his assertion of the right to self-representation would surely constitute an abuse of discretion. A trial court cannot insist that a defendant continue representing himself out of some punitive notion that that defendant, having made his bed, should be compelled to lie in it. *Grandison*, 479 U.S. at 875–76, 107 S.Ct. 38 (Marshall, J., dissenting from denial of certiorari) (emphasis added).

Five years later, the Court declined to review a decision by the Fifth Circuit which

reached the opposite result from the Maryland Court. In *United States v. Taylor*, 933 F.2d 307 (5th Cir.1991), *cert. denied*, 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991), the Fifth Circuit held that the trial court violated the defendant's Sixth Amendment rights by refusing to appoint counsel to represent him at sentencing though defendant previously waived right to counsel at trial. *Id.* at 313. The Supreme Court's denial of certiorari is not precedent, of course. *See Teague v. Lane*, 489 U.S. 288, 296, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We cannot tell whether the Court was, in the later case, persuaded by the logic previously offered by Justice Marshall.

ruled that this right can be waived by the defendant, we held in relevant part:

> Because the right to counsel is so central to our concepts of fair adjudication, we are reluctant to deny the practical fulfillment of the right—even once waived—absent a *compelling reason* that will survive constitutional scrutiny.... Therefore, although we recognize the right to counsel—once waived—is no longer absolute, we start with the strong presumption that a defendant's *post-trial* request for the assistance of an attorney should not be refused.

*Id.* at 700 (emphasis added).

We then explained that trial courts have discretion to deny a defendant's request for appointment of counsel in certain circumstances, such as when requests are made on the eve of trial for purposes of delay. *Id.* But we emphasized the "substantial practical distinction between delay on the eve of trial and delay at the time of a post-trial hearing," reasoning that postverdict continuances were far less likely to "substantially interfere with the court's or the parties' schedules." *Id.* at 700–01. Finally, we concluded that "in the absence of extraordinary circumstances," a defendant's *post-trial* revocation of his waiver should be allowed unless the government can show that the request is made "for a bad faith purpose." *Id.* at 701.[7]

Later in the aptly-named *United States v. Robinson,* 913 F.2d 712 (9th Cir.1990), we confronted nearly identical facts to the case at bar. In *Robinson,* the defendant initially waived his right to counsel and proceeded to trial pro se. *Id.* at 713. After the jury returned a guilty verdict,

the defendant revoked his waiver and requested counsel for sentencing. *Id.* at 718. In denying this request, the District Court made no finding of bad faith; instead, the District Court "felt that, having once rejected professional representation at trial, defendant was not entitled to trouble the court with a subsequent request." *Id.* We noted that sentencing is a critical stage and thus that *Menefield's* rationale applied. We accordingly concluded that the District Court's decision, relying not on a finding of bad faith but on the notion that the defendant could not inconvenience the court by changing his mind, violated the defendant's Sixth Amendment right to counsel. *Id.*

Numerous other federal circuit courts have held, similar to *Robinson,* that a trial court must give due consideration to a defendant's request for counsel at sentencing, despite a previous waiver of that right. *See e.g., United States v. Taylor,* 933 F.2d 307, 311 (5th Cir.1991), *cert. denied,* 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991) (holding that by refusing to appoint counsel to represent defendant at sentencing without a finding that defendant was attempting to hinder proceedings, the trial court violated defendant's Sixth Amendment rights); *United States v. Fazzini,* 871 F.2d 635, 643 (7th Cir.1989) (holding that as a general matter, a defendant's express revocation of an earlier waiver of counsel upon commencement of sentencing requires "at least an inquiry by the district judge into the defendant's representational desires."); *United States v. Holmen,* 586 F.2d 322, 324 (4th Cir.1978) (holding that "it was error to not have appointed counsel for the appellant at the sentencing stage of

---

7. In *Bell v. Hill,* 190 F.3d 1089, 1092–93 (9th Cir.1999), this court described *Menefield's* conclusion regarding a defendant's right to re-assert his right to counsel post-trial as being "foreordained" by the Sixth Amendment and Supreme Court precedent. Other courts

have disagreed with *Menefield* but have disputed only *Menefield's* separate conclusion that a motion for new trial is one such critical stage which requires the appointment of counsel. *See id.* at 1096 (Rymer J., dissenting).

proceedings" after appellant moved to withdraw his previous waiver of his right to counsel); *Davis v. United States,* 226 F.2d 834, 840 (8th Cir.1955), *cert. denied,* 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956) (holding that after defendant has waived counsel, a subsequent request for counsel prior to sentencing requires the court to inquire whether the waiver has been revoked).

 Five federal circuits have thus interpreted the Supreme Court's Sixth Amendment precedent to mean that the right to counsel is so integral to the fair administration of our justice system that a defendant who has waived his right to counsel may nonetheless re-assert that right for the purposes of a sentencing proceeding and cannot be denied on the grounds that the defendant has previously waived that right. Instead, the trial court must have a sufficient reason if that request is to be denied. No federal circuit court has ruled to the contrary. We therefore hold that these convergent holdings reflected and applied clearly established federal law as determined by the U.S. Supreme Court at the time of Robinson's sentencing, and that the state trial court was compelled to conduct itself accordingly. *See Williams v. Taylor,* 529 U.S. at 382, 120 S.Ct. 1495 (stating that the determination of whether a rule is "clearly established at the time a state court renders its final judgment ... is a question as to which the federal courts must make an independent evaluation") (internal quotations and citations omitted).

3. The District Court's decision

 Having identified the clearly established federal law that governs Robinson's denial of counsel claim, we review the

District Court's decision to reject that claim.[8] Despite acknowledging that Robinson's request for counsel should not have been denied unless the trial court had a compelling reason to do so, the District Court nonetheless concluded that the trial court did not err in denying Robinson's request. Although the District Court did not make an explicit finding that Robinson made his request for counsel in bad faith, the court implied such a conclusion:

> At the sentencing hearing, Robinson waited until after the state had presented its case in support[sic] finding him a habitual criminal and the court had rejected several of his objections before asking the court to appoint counsel and grant a continuance. Given the timing of his change of heart and his previous efforts to delay proceedings, the court had sufficiently compelling reasons to deny Robinson's request for counsel at sentencing.

The District Court based this conclusion on its findings that Robinson's request for counsel was untimely and that Robinson had been attempting to delay the proceedings.

In regard to the alleged untimeliness of Robinson's request for counsel, much hinges on the veracity of Robinson's claim that he sent the trial judge a letter requesting counsel on December 9, a week before the sentencing proceedings. The District Court found that "it is doubtful" that the trial judge ever received Robinson's letter and thus concluded that Robinson made only his last-minute request in the midst of the sentencing proceedings. We believe, however, that the relevant inquiry for Robinson's alleged attempt at delay is not whether Judge Adams *received* the letter,

---

**8.** The District Court also assumed that its AEDPA review of Robinson's federal habeas petition required it to apply Supreme Court

precedent as interpreted by our decisions in *Menefield* and *Robinson.*

but whether Robinson actually *sent* the letter. After all, Robinson was incarcerated at the time and could not control the judge's actual receipt of the letter. All he could do was send it.

 Moreover, the District Court ignored the Second Judicial District Court's finding that Robinson's "letter was sent." Because there is nothing in the record that disputes this finding,[9] we also assume that the letter requesting counsel was sent on or around December 9. We further note that Robinson's request—made a full week before the sentencing proceeding—was unlikely to have significantly delayed sentencing had the court chosen to appoint Robinson counsel. Indeed, Robinson requested that the court appoint Kafchinski—the same attorney who had already begun advising him on the upcoming proceedings and who ultimately served as standby counsel during those proceedings.[10]

The conclusion that Robinson was attempting to delay the sentencing proceedings is similarly flawed. The Second Judicial District Court's finding that Robinson *did* send the letter supports Robinson's contention that he did not have a sudden "change of heart" in the midst of the sentencing hearing proceeding, but rather was concerned over lack of counsel well before the sentencing hearing began. Nor does the record support the District Court's finding that Robinson had consistently engaged in delay tactics prior to sentencing. The record shows that Robinson engaged in the following procedural motions: after his first trial he filed a motion for a new trial based on a claim that he had not been afforded a probable cause hearing on the state's conspiracy charge, and he filed a request to represent himself before the second trial—both of which were granted by the trial court. Robinson is entitled to both challenge the constitutionality of the state's proceedings, and to represent himself without being accused of bad faith attempts at delay. In addition, since Robinson was already in jail and remained there through the time of the sentencing hearing, "delay" as such did not benefit him. We therefore conclude that any finding that Robinson made his request for counsel at the last minute in bad faith as a continued delay tactic was clearly erroneous.

 Because we are not persuaded by the rationale for denying Robinson's federal habeas claim, we review the Second Judicial District Court's decision for ourselves. When the Second Judicial District Court addressed the trial judge's denial of Robinson's request for counsel, the court reasoned:

> The initial decision to waive the right to counsel was a knowing and voluntary decision. [The trial judge] had the discretion to allow or refuse to allow Robinson to be relieved of the decision to

---

**9.** The Second Judicial District Court made this finding after conducting a full *evidentiary* hearing, and factual determinations made by the state court have the presumption of correctness, and can only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**10.** A standby attorney is not the equivalent of counsel as understood by the Sixth Amendment. In *McKaskle v. Wiggins,* 465 U.S. 168, 177–179, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Supreme Court explained that the role of a standby attorney is far more limited than that of regular counsel, and held that a pro se defendant's Sixth Amendment right to conduct his own defense was not violated by the participation of standby counsel. *McKaskle* logically implies that standby counsel is not the equivalent of "counsel" within the meaning of the Sixth Amendment, and the provision of standby counsel at sentencing proceedings did not satisfy the Sixth Amendment. *See Taylor,* 933 F.2d at 312–13.

waive the right to counsel. When considering the initial waiver, the timing of the request for counsel and the lack of any reasons given for the request, this Court finds no abuse of discretion in denying the request for counsel.

(Internal citations omitted).

The Second Judicial District Court incorrectly applied an abuse of discretion standard in determining that the trial court did not violate Robinson's Sixth Amendment rights. As explained above, it is clearly established federal law that the right to counsel may be re-asserted during sentencing, and a trial court cannot deny a defendant's timely request for representation without a sufficient reason. The state trial court, however, had no such reason; instead, it denied Robinson's request based primarily on the discredited idea that once waived, the right to counsel cannot be re-asserted at sentencing.[11] As the trial court's focus on Robinson's waiver of counsel at trial was inappropriate, we conclude that its denial of Robinson's request violated his Sixth Amendment right to counsel. The Second Judicial District Court's decision, which upheld the trial judge's denial of Robinson's request, was thus contrary to clearly established federal law.

## III. CONCLUSION

Consistent with the convergent rulings of numerous federal circuit courts, applying established Supreme Court precedent, we hold that Robinson's Sixth Amendment right to counsel was violated when the trial court denied his timely request for representation at sentencing based on the notion that once waived, the right to counsel cannot be re-asserted.

11. For instance, the trial judge stated that he had provided Robinson with an "extensive canvass" of the elements and consequences of each charge; and that Robinson had received

 Because of the fundamental importance of the right to counsel, Robinson need not prove prejudice and a harmless error analysis is not required. *See e.g., United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Robinson is entitled to a new sentencing hearing, for which he should be represented by counsel.

**REVERSED and REMANDED for further proceedings consistent with this opinion.**

copies of the presentence report, copies of exhibits in evidence, and contrary to the court's suggestions, "elected to represent himself in this proceeding."