**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Michael Sylvester WHITNEY,
Defendant—Appellant.**

No. 05–50323.

United States Court of Appeals,
Ninth Circuit.

Submitted April 4, 2006.*

Filed May 12, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Becky S. Walker, Esq., USLA—Office of the U.S. Attorney Criminal Division, Los Angeles, CA, Douglas F. McCormick, Esq., USSA—Office of the U.S. Attorney, Santa Ana, CA, for Plaintiff–Appellee.

Karyn H. Bucur, Attorney at Law, Laguna Hills, CA, for Defendant–Appellant.

Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.

## MEMORANDUM [**]

### A. Waiver of Counsel

Whitney claims that in order for a waiver to comply with the Sixth Amendment, the district court must find that a defendant has knowledge of three subjects: the nature of the charges, the possible penalties, and the dangers of self-representation. However, the en banc decision

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

in *Lopez* clarified that while the Court prefers that these elements be given, they are not required by the Constitution. *Lopez v. Thompson*, 202 F.3d 1110, 1117–19 (9th Cir.2000) (en banc).

Viewing the record as a whole, Whitney's waiver was knowing and intelligent. The waiver occurred on the first day of trial, since that is when Whitney conclusively invoked his right to proceed pro se. Prior to trial, he had been warned at six hearings spanning almost three years about the dangers of delay and the need for counsel. The district court gave a lengthy and detailed warning at the January 8, 2001 status conference, and inquired several times into Whitney's educational background and sophistication. Additionally, Whitney had previously been prosecuted by the SEC and litigated a case in state court raising the same general issues, making him aware of the general nature of the charges. He had witnessed his counsel's performance and responsibilities. Whitney was made aware of the dangers and disadvantages of self-representation.

### B. Sufficiency of Evidence on Specific Intent

■ Whitney argues that he lacked the specific intent either to defraud customers or to aid and abet the underlying scheme.

"When determining whether there is sufficient evidence to support a conviction, we review the evidence in the light most favorable to the prosecution and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Serang*, 156 F.3d 910, 914 (9th Cir.1998).

"The elements of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud, and (2) using or causing the use of the mails to further the scheme." *Id.* at 914. "[T]he government must prove a specific intent to defraud."

*United States v. Sayakhom*, 186 F.3d 928, 941 (9th Cir.1999). "Intent ... may be inferred from the defendant's statements and conduct. Deceitful statements of half truths or the concealment of material facts is actual fraud under the mail fraud statute." *Id.* (citation and quotation marks omitted). Aiding and abetting requires a specific intent to facilitate the underlying crime. *United States v. Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir.1997).

There is evidence that Whitney knew from the beginning that the company was not acquiring or boarding birds for its customers, yet he continued to sign persons to sales contracts. He sent out boarding invoices for non-existent birds, collected the money, and spent it. He reassured customers that there were no problems, both by sending the boarding invoices and by addressing their complaints and concerns directly. *Compare United States v. Manarite*, 44 F.3d 1407, 1412 (9th Cir.1995) (discussing use of mails for "lulling scheme," in which "the mailing reassures the victim that all is well, discouraging him from investigating and uncovering the fraud"); *cf. United States v. Maze*, 414 U.S. 395, 403, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (discussing the fraudulent nature of mails "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place"). Nothing more was required.

### C. Exclusion of Evidence

"To evaluate whether exclusion of evidence reaches constitutional proportions, we should consider five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole

evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense." *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990). "We must then balance the importance of the evidence against the state interest in exclusion." *Id.*

■ Whitney wished to introduce evidence of the civil case to support his defense that he was duped by the co-defendants, and would have paid the customers back before the indictment except that the civil case prevented him. The Government defends by pointing to a joint stipulation, which states: "The indictment ... was filed on March 8th of 2000; 2. A civil suit brought by investors against The Ostrich Group and Michael Whitney was concluded on September 27, 2000."

■ Whitney fails to show that any excluded evidence would have constituted a major part of his defense. He also wished to introduce evidence that he survived summary judgment in his SEC action, unlike his co-defendants, and that he eventually settled with the SEC without admitting any wrongdoing. He also wanted to show that his settlement was for $23,000, whereas his co-defendants paid $819,000.

■ Such evidence was properly excludable under Federal Rule of Evidence 408 as an offer to compromise offered for the validity of the underlying claim. Fed. R.Evid. 408. As the comments to Rule 408 note, "the offer may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R.Evid. 408 advisory committee's note. Any possible probative value was outweighed under Rule 403 by the distraction it would have caused the jury.

### D. *Brady* Violation

There are three elements to a *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 690, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (internal quotations omitted). Prejudice is determined by examining the cumulative impact of the evidence. *See United States v. Sarno*, 73 F.3d 1470, 1505 (9th Cir.1995). "We review allegations of *Brady* violations de novo." *United States v. Danielson*, 325 F.3d 1054, 1074 (9th Cir.2003).

■ Whitney claims that the prosecution improperly failed to reveal that one of its investigators had spoken with Edward Gogin, a Certified Public Accountant who had assisted The Ostrich Group, prior to the case.

There was no *Brady* violation. The statements were not suppressed and they were immaterial. Gogin's letter states that he had previously told Whitney everything he had told the inspector. The Government's theory was that Whitney made misstatements to customers; his presence in accounting meetings is irrelevant to this theory.

### E. Attorney Conflict of Interest

■ An actual conflict is one *"that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). The Court reviews such claims de novo. *Lambert v. Blodgett*, 393 F.3d 943, 985 (9th Cir.2004).

The Government initially argues that there can be no finding of inadequate assistance of counsel if we hold that Whitney waived his right to counsel; that once the Sixth Amendment is waived, it cannot be violated. *Cf. Robinson v. Ignacio*, 360 F.3d 1044, 1056 (9th Cir.2004).

The Government's argument is unpersuasive. Counsel must meet constitutional requirements prior to a defendant's waiver if the Sixth Amendment has attached. *Cf. Robinson*, 360 F.3d at 1059 (holding that Constitution protected right to counsel at sentencing even where it was waived at trial).

Whitney points to two conflicts. First, he claims that Attorney Stewart, who acted on special appointment at his special appearance and bail hearing, later became partners with Attorney Miller. In turn, Miller later was appointed counsel for codefendant Hudson. Hudson and Whitney blamed each other, so Whitney contends that the partnership could not represent both without conflict.

Whitney's claim fails. Stewart faced no conflicts at the time he made his appearance, because he was not yet associated with Miller. Stewart also testified that Whitney understood that Stewart was not his attorney, and that Stewart had received no confidential information. Furthermore, Whitney does not demonstrate any adverse effect.[1]

■ Whitney claims that Bienert, Miller, Stewart, and a fourth lawyer, Wiechert, were effectively law associates because their offices were adjacent, they shared a paralegal, and they sought to buy a building together. However, merely sharing office space does not establish joint representation for Sixth Amendment purposes. *See Lambert*, 393 F.3d at 986–87. Whitney also identifies no adverse effect on Bienert's representation. Whitney mentions the possibility that Bienert's advice could have been tainted, but "a mere theoretical division of loyalties" does not show a violation. *Mickens*, 535 U.S. at 171, 122 S.Ct. 1237.

## F. Guidelines

"[We] review[ ] the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Menyweather*, 431 F.3d 692, 697 (9th Cir.2005) (citation omitted).

The district court applied U.S.S.G. § 1B1.3(a)(1) (Nov.1995) to hold Whitney accountable for all of the losses that occurred after Whitney joined The Ostrich Group (a total of $567,767). This provision provides that a defendant is responsible for:

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. . . .

U.S.S.G. § 1B1.3(a)(1).

The district court adopted the PSR, which described the scheme and Whitney's involvement in detail. *See United States v. Ortiz*, 362 F.3d 1274, 1277 (9th Cir.2004) (holding that district court may find facts to support both factors by adopting PSR). Additionally, the district court specifically found that the losses were foreseeable by Whitney.

---

**1.** While Whitney claims that the court, upon appointing Miller counsel, should have made a Federal Rule of Criminal Procedure 44(c) inquiry, he fails to analyze what effect a failure to inquire would have on the Sixth Amendment.

### G. Due Process Violation in Sentencing

Whitney claims that the Fifth Amendment requires judges to find all Guidelines facts that raise the sentence above the base level justified by the jury's findings beyond a reasonable doubt.

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Court did not address the applicable burden of proof for judge-found facts under a non-mandatory guidelines scheme.[2] The Court has already remarked post-*Booker* that "[a]s a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing." *United States v. Dare*, 425 F.3d 634, 642 (9th Cir.2005) (rejecting higher standard for judicial fact-finding that raises a statutory mandatory minimum). *Booker* did "not foreclose judicial factfinding in the sentencing context, nor [did it] dictate that judges must find those facts beyond a reasonable doubt." *United States v. Bryant*, 420 F.3d 652, 656 (7th Cir.2005).

**AFFIRMED.**

---

**2.** Despite Whitney's argument to the contrary, *Booker* does apply to this proceeding. *See United States v. Dupas*, 419 F.3d 916, 920–21 (9th Cir.2005), *cert. denied*, — U.S. —, 126 S.Ct. 1484, 164 L.Ed.2d 261 (2006).

