**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFF FOWLER,

　　　　　*Petitioner-Appellant,*

　　　　　v.

SACRAMENTO COUNTY SHERIFF'S
DEPARTMENT; CALIFORNIA ATTORNEY
GENERAL,

　　　　　*Respondents-Appellees.*

No. 04-15885

D.C. No.
CV-00-02195-
MCE/PAN

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
June 14, 2005—San Francisco, California

Filed August 31, 2005

Before: Richard C. Tallman, Jay S. Bybee, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

11925

---

**COUNSEL**

Quin Denvir and Allison Claire, Office of the Federal Defender, Sacramento, California, for petitioner-appellant Jeff Fowler.

Bill Lockyer, Robert R. Anderson, Mary Jo Graves, John G. Mclean and George M. Hendrickson, Office of the Attorney General of the State of California, Sacramento, California, for respondent-appellee the State of California.

---

**OPINION**

BEA, Circuit Judge:

Defendant-Appellant Jeff Fowler was convicted of annoying or molesting Charla Lara in violation of California Penal Code § 647.6 following a jury trial in which he was precluded from cross-examining Lara regarding two prior incidents in which she alleged that other men had molested her. We conclude that the proffered cross-examination sufficiently bore upon Lara's reliability or credibility such that the jury might reasonably have questioned it and, thus, that the cross-examination implicated Fowler's Sixth Amendment right to confrontation. We further conclude that the trial court's implicit determination — that precluding the proffered cross-examination, rather than limiting it, was not unreasonable,

arbitrary or disproportionate given the trial court's concerns about waste of time, confusion of the issues, and prejudice — was itself objectively unreasonable. Finally, because Lara's testimony was crucial to the State's case, which, in any event, was not strong, we conclude that this error had substantial and injurious effect or influence in determining the jury's verdict. We therefore reverse the district court's order denying Fowler's petition for a writ of habeas corpus, and remand for issuance of a conditional writ.

## I.

### A.

On September 5, 1998, Fowler agreed to drive Lara from her mother's apartment to her friend's house. Lara, who was then fourteen years old, was daughter to Kelly Kenniston, with whom Fowler had been romantically involved. All parties agree that, before driving Lara to her friend's house, Fowler applied some type of lotion to her, and that, while driving Lara to her friend's house, Fowler engaged her in a sexually explicit conversation. However, the details in Lara's and Fowler's accounts differ considerably. There were no third-party witnesses to either event.

#### 1.

At trial, Lara testified that before Fowler drove her to her friend's house, he suggested that she change clothes and then entered the walk-in closet while she was wearing only a bra and underpants to offer her a particular dress. Lara put on the dress and then excused herself to the bathroom, where Fowler followed and told her that she needed some lotion and that he would apply it. He first applied it to her lower legs and thighs and, while doing so, his hand brushed the outside of her underpants several times. He then applied the lotion to her arms, after which he told Lara to lift her dress so that he could apply it to her back. Lara complied, and, as Fowler was apply-

ing the lotion to her back, he pushed her underpants down with his hand. He also applied the lotion to Lara's stomach, and, while doing so, slipped his hand underneath her underpants, but did not touch her vagina. Finally, he applied the lotion to her breasts, moving his hands inside her bra and touching her nipples. Fowler and Lara then left the apartment. While driving Lara to her friend's house, Fowler asked her whether she watched pornographic movies. He also suggested that, if she "got 'horny,' " she should masturbate rather than have sex, but that, should she have sex, she should use a condom.

### 2.

As noted above, Fowler concedes that he applied the lotion and that he later engaged Lara in a sexually explicit conversation. Otherwise, he tells a very different story. Fowler testified that Lara was already wearing the dress when he entered the apartment. He testified further that Lara asked him to apply the lotion, and that he did so quickly and asexually. Specifically, while he acknowledged applying the lotion to Lara's lower legs, arms and possibly her shoulders and back, he denied having touched her thighs, groin, stomach, breasts or nipples. As for the later conversation, Fowler explains that he initiated the conversation because Lara's father previously had told Fowler that Lara was "messing around" with her step-brothers, and Fowler was attempting to counsel Lara about the differences between appropriate and inappropriate sexual behavior.

### 3.

After Lara arrived at her friend's house, her friend's mother noticed that Lara did not appear to be feeling well. When she inquired, Lara eventually said something about Fowler having put lotion on her, prompting her friend's mother to telephone Kenniston, who, in turn, contacted the police. About two weeks later, Lara was questioned about the incidents by an

interview specialist with the Multi-Disciplinary Interview Center ("MDIC"), while a detective with the Sacramento County Sheriff's Department observed from behind a two-way mirror.

### B.

### 1.

Shortly afterwards, Fowler was charged with sexual battery in violation of California Penal Code § 243.4[1] and annoying or molesting a minor in violation of California Penal Code § 647.6.[2] He pleaded not guilty.

Before trial, the State moved to prevent Fowler from cross-examining Lara and offering evidence regarding two incidents of molestation that, in her MDIC interview, Lara had claimed to have suffered about six years before the incident involving

---

[1] A sexual battery takes place when, for the purpose of sexual arousal, sexual gratification, or sexual abuse, the defendant (1) touches an intimate part of the alleged victim while the alleged victim is (a) unlawfully restrained and the touching is against the will of the alleged victim, (b) institutionalized for medical treatment and seriously disabled or medically incapacitated and the touching is against the will of the alleged victim, or (c) unconscious of the nature of the act because the defendant fraudulently represented that the touching served a professional purpose, or (2) causes the alleged victim to masturbate or touch an intimate part of the defendant or another while the alleged victim is (a) unlawfully restrained and the touching is against the will of the alleged victim, or (b) institutionalized for medical treatment and seriously disabled or medically incapacitated and the touching is against the will of the alleged victim. Cal. Penal Code § 243.4.

[2] Conduct qualifies as annoying or molesting for purposes of California Penal Code § 647.6 if the conduct "would unhesitatingly disturb or irritate a normal person if directed at that person" and was "motivated by an unnatural or abnormal sexual interest in . . . the alleged child victim[ ]." CALJIC 16.440; *accord People* v. *Lopez*, 965 P.2d 713, 717 (1998). The conduct need not "actually disturb or irritate the child" nor must "the body of the child be actually touched." CALJIC 16.440; *accord Lopez*, 965 P.2d at 717.

Fowler. Fowler opposed the State's motion, arguing that it would violate his Sixth Amendment rights to confront and cross-examine adverse witnesses and his Fourteenth Amendment right to due process. In opposing the motion, Fowler made a proffer to the trial court detailing the proposed cross-examination. The proffer was based on the MDIC interview and on a police report in connection with the second of the two earlier alleged incidents of molestation.

According to Fowler's proffer, the first of these two prior incidents involved an "acquaintance" of Kenniston named Tommy Filson. Lara claimed to have been sleeping at Filson's residence when Filson "grabbed her in the crotch, pulled down her pants, touched her butt," and then repeated the process at least twice. According to Lara, Filson "went to either jail or prison as a result of that."[3]

The second incident occurred "a little bit after that" and involved Kenniston's then-boyfriend Steven Hendrix. According to Fowler's reading of Lara's MDIC interview:

> My mom had a boyfriend and, umm, like this is like — like a little bit after that Tommy [Filson] incident. *So I was thinking I was just like a little cautious about things.* And he was putting me to bed, and I don't really know if he meant to do that, so he — like he was like flying me into bed and he, like he was holding my crotch, and I was just — I said something to my mom, and my mom went and told the cops. *But I don't think . . . it was that big of a deal.*

(Emphases added). The Bakersfield Police Department inves-

---

[3]In fact, although Filson was charged with committing lewd and lascivious acts on both Lara and a friend with whom Lara was sharing a bed, Filson was convicted of committing lewd and lascivious acts only as to the friend, not Lara.

tigated this second incident, and although, in retrospect, Lara admitted to having been "a little cautious about things" and described the incident as not "that big of a deal," she reported to the Bakersfield Police Department at the time of the incident "that [Hendrix] put his hand between her legs on her private part and squeezed about four times." Nonetheless, the Bakersfield Police Department concluded that the case was "unfounded," apparently because Lara's statements were uncorroborated and because Kenniston contradicted Lara. Specifically, although intoxicated at the time of the alleged incident, Kenniston claimed to have observed Hendrix putting Lara to bed on the night in question and to have seen no inappropriate touching: "[Kenniston] said she only observed [Hendrix] . . . lay [Lara] on the bed, in a sense. She said before that she did not observe anything unusual . . . . She never noticed him to touch [Lara] in any way, and she believed [Lara] was asleep during the entire time."

Fowler argued that the incident involving Hendrix was evidence that, owing to the earlier incident involving Filson, Lara had a tendency to, as she put it, be "a little cautious about things" and, perhaps, as Fowler put it, to be "supersensitive" to physical contact "somewhere near a sensitive area such as a breast or vaginal area or crotch" by adult men and, thus, to "[mis]perceive[ ]," "exaggerate[ ]" or "overreact[ ]." Fowler argued that this was particularly relevant given that he "acknowledge[d] that he rubbed cream on [Lara's] legs and arms," but denied "touch[ing] her in a sexual manner or in a sexual place." Fowler also argued that the incident involving Hendrix was evidence not merely of Lara being prone to overreaction, but also of her untruthfulness.

The trial court granted the State's motion to preclude the proffered cross-examination. It first explained that there was no "indication" that Lara actually overreacted or lied in the prior incidents and that the facts of the prior accusations were "very dissimilar" from those here. It then "weigh[ed] the evidence" pursuant to California Evidence Code § 352 against

the facts that its introduction "would consume an inordinate amount of court time," "would be extremely confusing to this jury," and "would be significantly more prejudicial than it would be probative."[4]

## 2.

At the conclusion of the ensuing two-day trial, the jury deliberated for four days. Ultimately, it was unable to reach a unanimous verdict as to the sexual battery charge, but convicted Fowler of annoying and molesting Lara. Fowler was placed on three-years probation, conditioned on his serving 150 days in county jail and registering as a sex offender pursuant to California Penal Code § 290.

## 3.

After exhausting his state remedies, Fowler filed in federal district court the petition for a writ of habeas corpus now before us. He made six claims, including that in limiting his cross-examination of Lara, the trial court violated his Sixth Amendment right to cross-examine adverse witnesses. The magistrate judge recommended issuing the writ on the basis of this claim, but otherwise found Fowler's claims to be without merit. Rejecting the magistrate judge's recommendation, the district court concluded that all of Fowler's claims were without merit and denied the petition. Fowler then filed this timely appeal, and the district court granted a certificate of appealability as to all of the issues raised in the petition. We have jurisdiction pursuant to 28 U.S.C. § 2253.[5]

---

[4]California Evidence Code § 352 is the rough equivalent of Federal Rule of Evidence 403, stating: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code § 352.

[5]Typically, federal courts have jurisdiction to consider a habeas petition only if the petitioner is " 'in custody' under the conviction or sentence

## II.

### A.

We review a district court's decision to deny a petition for a writ of habeas corpus *de novo* and its findings of fact for clear error. *Robinson* v. *Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

### B.

Because Fowler filed this petition for a writ of habeas corpus on October 6, 2000 and, thus, after the effective date of the Antiterrorism and Effective Death Penalty Act

---

under attack at the time his petition is filed." *Maleng* v. *Cook*, 490 U.S. 488, 490-91 (1989) (citing *Carafas* v. *LaVallee*, 391 U.S. 234, 238 (1968)); *Resendiz* v. *Kovensky*, 416 F.3d 952, ___, 2005 WL 1501495, at *6 (9th Cir. 2005) (noting exceptions to the "in custody" requirement); *see also* 28 U.S.C. §§ 2241(c)(3), 2254(a). "A probationary term is sufficient custody to confer [this] jurisdiction." *See United States* v. *Spawr Optical Research, Inc.*, 864 F.2d 1467, 1470 (9th Cir. 1988). Fowler was on probation at the time he filed his habeas petition. Therefore, this is unlike *Henry* v. *Lungren*, 164 F.3d 1240 (9th Cir. 1999), wherein we held that being subject to California's sex offender registration requirement is merely a collateral consequence of conviction and does not itself satisfy the requirement for habeas relief that the petitioner be "in custody." *Id.* at 1241-42 (citing *Williamson* v. *Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998)).

Further, although Fowler is no longer on probation, "[s]o long as the adverse consequences of a criminal conviction remain, a petition for a writ of habeas corpus is not moot, even though the petitioner's custody has expired since filing." *Spawr Optical Research, Inc.*, 864 F.2d at 1470 (citing *Carafas*, 391 U.S. at 236-38); *accord Spencer* v. *Kemna*, 523 U.S. 1, 7 (1998); *Maleng*, 490 U.S. at 491-92. Fowler continues to be subject to California's sex offender registration requirement. Cal. Penal Code §§ 290(a)(1)(A), 290(a)(2)(A) (requiring those who have been convicted of specified offenses to register as sex offenders so long as they reside, attend school, or work in California, and listing annoying or molesting a minor in violation of California Penal Code § 647.6 as among the offenses requiring registration).

("AEDPA"), its provisions apply. *Lindh* v. *Murphy*, 521 U.S. 320, 322-23, 336 (1997). AEDPA states in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1). Before applying this now familiar provision, three points bear repetition.

*First*, "clearly established Federal law[ ] as determined by the Supreme Court of the United States," *id.*, refers to "the governing legal principle or principles" set forth by the Supreme Court as of the time of the relevant state-court decision, *Lambert* v. *Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Lockyer* v. *Andrade*, 538 U.S. 63, 71-72 (2003)), which is the "last reasoned decision" by the state court. *Robinson*, 360 F.3d at 1055. Nevertheless, "[o]ur cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and may also help us determine what law is 'clearly established.'" *Duhaime* v. *Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

*Second*, a decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams* v. *Taylor*, 529 U.S. 362, 405-06 (2000). By contrast, the mere

failure to identify expressly the correct legal standard does not render the state court's decision "contrary to" clearly established federal law as determined by the Supreme Court so long as the state court's reasoning and result are not "contrary to" that precedent. *Early* v. *Packer*, 537 U.S. 3, 8 (2002).

*Third*, a decision involves "an unreasonable application of" clearly established federal law as determined by the Supreme Court only if its application of that law is "objectively unreasonable," *Williams*, 529 U.S. at 409, which means something more than merely incorrect. *Id.* at 410-11. "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule. . . . The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough* v. *Alvarado*, 541 U.S. 652, 664 (2004).

## III.

### A.

**[1]** The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. This right, which is incorporated by the Fourteenth Amendment so as to apply to state prosecutions, *Pointer* v. *Texas*, 380 U.S. 400, 403 (1965), "guarantees the defendant [not only] a face-to-face meeting with witnesses appearing before the trier of fact," *Coy* v. *Iowa*, 487 U.S. 1012, 1016 (1988), but also the right to cross-examine those witnesses. *Pointer*, 380 U.S. at 404, 406-07; *Douglas* v. *Alabama*, 380 U.S. 415, 418 (1965) ("[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination . . . ."). Thus, as is relevant here, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' "

*See Delaware* v. *Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis* v. *Alaska*, 415 U.S. 308, 318 (1974)); *see also Olden* v. *Kentucky*, 488 U.S. 227, 231 (1988) (per curiam) (quoting *Van Arsdall*, 475 U.S. at 680).

1.

Before turning to what is meant by "appropriate" cross-examination, *Van Arsdall*, 475 U.S. at 680, two points warrant emphasis.

[2] *First*, "the right to cross-examine includes the opportunity to show [not only] that a witness is biased, [but also] that the testimony is exaggerated or [otherwise] unbelievable." *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 51-52 (1987) (plurality); *see also Delaware* v. *Fensterer*, 474 U.S. 15, 22 (1985) (per curiam) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."); *Davis*, 415 U.S. at 316 ("[T]he cross-examiner is . . . permitted to delve into the witness' story to test the witness' perceptions and memory, [and] . . . has traditionally been allowed to impeach, i.e., discredit, the witness."). Thus, cross-examination may implicate the Sixth Amendment without implying conscious or malicious fabrication on the part of the witness so long as it otherwise bears on the witness's reliability or credibility. *See Van Arsdall*, 475 U.S. at 680. For example, in *Davis*, the defendant sought to cross-examine a prosecution witness regarding the fact that, at the time he identified the defendant to the police, he was on probation after having been adjudicated a juvenile delinquent. *Davis*, 415 U.S. at 309-11. In so doing, the defense sought to show not that the prosecution witness consciously or maliciously lied, but that he might have made a "hasty and faulty identification" of the defendant to shift suspicion away from himself,

or that he might have been subject to "undue pressure" from the police resulting from fear of possible probation revocation. *Id.* at 311, 317-18. The Supreme Court held that the precluded cross-examination came within the ambit of the Sixth Amendment. *Id.* at 317-18.

**[3]** *Second*, cross-examination may implicate the Sixth Amendment even if it is not certain to affect the jury's assessment of the witness's reliability or credibility. *See Davis*, 415 U.S. at 317 (refusing to "speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted th[e] [defendant's] line of reasoning had counsel been permitted to fully present it," but nevertheless concluding that the trial court violated the defendant's Sixth Amendment right to cross-examination by precluding the proffered cross-examination). Rather, it is sufficient that a jury "might reasonably" have questioned the witness's reliability or credibility in light of the cross-examination. *Van Arsdall*, 475 U.S. at 679; *see also Olden*, 488 U.S. at 232 (1988) (quoting *Van Arsdall*, 475 U.S. at 680); *Van Arsdall*, 475 U.S. at 680 (holding that the defendant "state[d] a violation of the Confrontation Clause" where "[a] reasonable jury might have received a significantly different impression of [the prosecution witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination"); *Davis*, 415 U.S. at 319 (concluding that the trial court violated the defendant's Sixth Amendment right to cross-examination where "[s]erious damage to the strength of the State's case would have been a real possibility had [the defendant] been allowed to pursue [the proffered] line of inquiry").

### 2.

Of course, even where cross-examination bears on the reliability or credibility of a witness and sufficiently so such that a jury might reasonably question such reliability or credibility, the cross-examination must nevertheless be "appropriate":

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the [reliability or credibility] of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*See Van Arsdall*, 475 U.S. at 679; *see also Olden*, 488 U.S. at 232 (same); *Davis*, 415 U.S. at 316 (noting that cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); *Alford* v. *United States*, 282 U.S. 687, 694 (1931) (holding that a trial court "may exercise a reasonable judgment in determining when [a] subject [on cross-examination] is exhausted" and has "a duty to protect [the witness] from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate"); *Wood* v. *Alaska*, 957 F.2d 1544, 1549-54 (9th Cir. 1992) (explaining that even relevant cross-examination may properly be excluded if its probative value is outweighed by other legitimate interests).[6]

---

[6]The Supreme Court has likewise held that other, closely related rights are similarly limited. *E.g.*, *Michigan* v. *Lucas*, 500 U.S. 145, 149 (1991) (" '[T]he right to present relevant testimony is not without limitation. The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." ' ") (quoting *Rock* v. *Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973))); *Maryland* v. *Craig*, 497 U.S. 836, 844-50 (1990) (holding that although the Sixth Amendment right to "face-to-face confrontation" is not "absolute" and, like "other Sixth Amendment rights[,] must also be interpreted in the context of the necessities of trial and the adversary process," it nonetheless may "be dispensed with . . . only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured").

**[4]** Rather significantly, however, these restrictions must be "reasonable," *Van Arsdall*, 475 U.S. at 679, and " 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' " *Lucas*, 500 U.S. at 151 (quoting *Rock*, 483 U.S. at 56). For example, in *Van Arsdall*, although the Supreme Court noted that trial courts may impose "reasonable limits" on cross-examination, it nevertheless held that the trial court there violated the defendant's Sixth Amendment right to cross-examination when, pursuant to the equivalent of California Code of Evidence § 352, it prohibited "*all* inquiry" about an event that the State conceded had taken place and that a jury "might reasonably" have found bore on the witness's reliability or credibility. *Van Arsdall*, 475 U.S. at 676, 679 (emphasis in original). Likewise, in *Olden*, the Supreme Court acknowledged that a trial court may impose "reasonable limits" on cross-examination, but, in the very same breath, concluded that the limitation there, again, pursuant to the equivalent of California Code of Evidence § 352, was "beyond reason" because mere "[s]peculation" as to the prejudicial effect of precluded cross-examination could not justify its exclusion where it had "such strong potential to demonstrate the falsity of [the prosecution witness's] testimony." *Olden*, 488 U.S. at 230, 232. We too have held that precluding cross-examination in certain circumstances was unreasonable, arbitrary or disproportionate. *E.g.*, *United States* v. *Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) (holding that the trial court was "erroneous" in characterizing the precluded cross-examination as irrelevant and misleading and, thus, concluding that "we cannot sustain the limitation on cross examination as an exercise of permissible discretion"); *cf. LaJoie* v. *Thompson*, 217 F.3d 663, 671-73 (9th Cir. 2000) (concluding that the exclusion of evidence pursuant to a state rape shield law was arbitrary and disproportionate to the purposes served by the rape shield law and, thus, that the exclusion of the evidence was an unreasonable application of clearly established law as determined by the Supreme Court).

B.

1.

The last-reasoned state-court decision here — and, thus, the decision that we review — is the trial court's. *See Robinson* v. *Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). As noted above, in granting the State's motion *in limine*, the trial court first explained that there was no "indication" that Lara actually overreacted or lied in the prior incidents and that the facts of the prior accusations were "very dissimilar" from those here. It then "weigh[ed] the evidence" pursuant to California Evidence Code § 352 against the facts that its introduction "would consume an inordinate amount of court time," "would be extremely confusing to this jury," and "would be significantly more prejudicial than it would be probative." Concluding that the probative value of the proffered cross-examination was substantially outweighed by these concerns, the trial court precluded it.

2.

a.

**[5]** Although the trial court did not expressly rely upon "the governing legal principle," *see Lambert* v. *Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004), its reasoning was nonetheless consistent with that principle. It took into consideration various legitimate state interests such as waste of time, confusion and prejudice, and, in weighing those interests against the probative value of the proffered cross-examination, it implicitly determined that the exclusion of that evidence was not unreasonable, arbitrary or disproportionate. *See Lucas*, 500 U.S. at 151; *Van Arsdall*, 475 U.S. at 679. Nor are there any Supreme Court cases that are materially indistinguishable from the situation here in which the Supreme Court held contrary to the trial court. Thus, the trial court's ruling was not "contrary to" clearly established federal law as determined by the Supreme

Court. *See Early* v. *Packer*, 537 U.S. 3, 8 (2002); *Williams* v. *Taylor*, 529 U.S. 362, 405-06 (2000).

b.

Having so concluded, we must nevertheless consider whether the trial court's preclusion of the cross-examination was an objectively unreasonable application of that precedent. In so doing, we consider first whether the proffered cross-examination sufficiently bore upon Lara's reliability or credibility such that a jury might reasonably have questioned it, and, if so, whether the trial court's preclusion of this cross-examination was unreasonable, arbitrary or disproportionate given its concerns about waste of time, confusion and prejudice.

[6] According to Fowler's proffer, Lara reported to the Bakersfield Police Department "that [Hendrix] put his hand between her legs on her private part and squeezed about four times." The Bakersfield Police Department concluded, however, that the case was "unfounded." Further, despite having reported what appears to be a deliberate molestation, Lara herself later conceded in her MDIC interview that she had been "a little cautious about things" and that, in retrospect, she did not view the Hendrix incident as "that big of a deal," suggesting that she may have overreacted and perhaps exaggerated in reporting the Hendrix incident. Based on this evidence, a jury very well might reasonably have concluded that Lara was hypersensitive to physical contact by adult men and, thus, tended to misinterpret or misperceive the conduct, overreact and then, perhaps unconsciously, exaggerate or embellish in recounting the conduct so as to fit her subjective misinterpretation or misperception.[7] Additionally, given Ken-

---

[7]Similarly, albeit in a pre-AEDPA case, we have before recognized that exclusion of evidence tending to show that an alleged victim of sexual abuse is prone to fantasy implicates the Sixth Amendment. In *Franklin* v. *Henry*, 122 F.3d 1270 (9th Cir. 1997), *overruled on other grounds by Pay-*

niston's statements to the detective investigating the Hendrix incident that "she only observed [Hendrix] . . . lay [Lara] on the bed," "that she did not observe anything unusual," that "[s]he never noticed him to touch [Lara] in any way," and that "she believed [Lara] was asleep during the entire time," a jury might reasonably have found that Lara had consciously lied about the Hendrix incident.

**[7]** Nor, finally, was the Hendrix incident so dissimilar from the allegations against Fowler that Lara's arguable lack of reliability or credibility in reporting that incident was irrelevant as to her allegations here. In recommending that Fowler's habeas petition be granted on this issue, the magistrate judge persuasively set forth the similarity of the incidents:

> The trial court also erred in characterizing the [Hendrix] incident as "dissimilar" to allegations against [Fowler]. Both incidents involved alleged molestation by Kenniston's boyfriend; Lara accused both men of repeatedly grabbing or bumping her groin

---

*ton* v. *Woodford*, 299 F.3d 815, 829 n.11 (9th Cir. 2002) (en banc), the defendant was tried for sexually abusing a child in violation of California Penal Code §§ 288.5(a) and 1203.066(a)(8) on the basis of the child's statement that the defendant had "licked her 'private' and made her lick his 'private.' " *Id.* at 1270-71. At trial, the defendant attempted to introduce as evidence that he had witnessed the same child tell her two brothers that her mother "had come into her room and 'licked her private.' " *Id.* at 1272. The trial court refused to admit this evidence. *Id.* The defendant was convicted and, after exhausting his state remedies, filed a habeas petition in district court, which the district court denied. *Id.* at 1272-73. On appeal, we reversed, holding: "The explicit testimony bore on the credibility of the only percipient witness against [the defendant]. If believed by the jury, [defendant's] testimony would have shown [the alleged victim] capable of fantasies about her mother analogous to the charges she made against [the defendant]." *Id.* at 1273. We note further that fantasy by child witnesses is well-documented. *Craig*, 497 U.S. at 868 (Scalia, J., dissenting) (listing "studies show[ing] that children are substantially more vulnerable to suggestion than adults, and often unable to separate recollected fantasy (or suggestion) from reality").

through her clothing; both men admitted physical contact occurred but not to the groin; both men gave an innocent explanation for what took place. The incident [here] was strikingly similar, regardless of its remoteness in time. The evidence had substantial relevance.

The incidents were not, of course, identical, but, as Fowler astutely observed before the trial court, "life isn't like that."

**[8]** Thus, although the trial court concluded that there was no "indication" that Lara actually overreacted or lied in the prior incidents and that the facts of the prior incidents were "very dissimilar" from those here, in fact, there can be no doubt that the precluded cross-examination sufficiently bore on Lara's reliability or credibility such that a jury might reasonably have questioned it.[8] We reiterate that "[w]e cannot [and do not] speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted [Fowler's] line of reasoning had counsel been permitted to fully present it." *Davis*, 415 U.S. at 317. But where, as here, the proffered cross-examination might reasonably have influenced the jury's assessment of Lara's reliability or credibility, absent sufficient countervailing interests, "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [Lara's] testimony which provided a crucial link in the proof . . . ." *Id.*

**[9]** Turning now to those countervailing interests, the trial court predicted that the cross-examination "would consume

---

[8]Indeed, because it expressly invoked California Evidence Code § 352, the trial court implicitly concluded that the proffered evidence was to some degree relevant. There is no occasion to employ the weighing process of California Evidence Code § 352 unless the proffered evidence, later rejected, is relevant. If irrelevant, the evidence is excluded by California Evidence Code § 350, which provides: "No evidence is admissible except relevant evidence."

an inordinate amount of time," but, in fact, there is no reason to believe that cross-examination as to the two prior incidents necessarily would have. Had the cross-examination been permitted, Fowler would have asked Lara about the prior incidents. At oral argument, Fowler estimated that this testimony would take no more than one hour. Only if Lara testified inconsistently with either her interview or the police report would Fowler have been forced to resort to extrinsic evidence in the form of the MDIC interview, police report or other witnesses.[9] Even then, Fowler advised the trial court that he would "be happy" "to abide with whatever restrictions the Court wishes to impose as far as keeping [the cross-examination] brief, relatively nonintrusive, yet getting the probative facts before the jury." Rather than setting forth reasonable restrictions and holding Fowler to his word, the trial court simply excluded any cross-examination at all on the subject.

**[10]** The trial court also predicted that the cross-examination "would be extremely confusing to this jury." Our criminal and civil justice systems routinely charge juries with deliberating in cases involving exceedingly complex factual and legal issues, often involving multiple parties and multiple events. The defendant's theory here, by comparison, is rather straightforward. Indeed, with respect to the potential confusion it might cause the jury, the introduction of evidence regarding the Filson and Hendrix incidents is rather like the routine introduction of evidence of so-called prior bad acts against defendants charged with certain sex offenses. *See*, *e.g.*, Fed. R. Evid. 414 (permitting introduction of such evidence where the defendant is charged with child molestation); Cal. Evid. Code § 1108 (permitting introduction of such evidence where the defendant is charged with, among other crimes, sexual battery in violation of California Penal Code

---

[9]Fowler represented to the trial court that he had under subpoena Hendrix, the detective that investigated the Hendrix incident, and the custodian of records from the Bakersfield Police Department.

§ 243.4 and/or annoying or molesting a minor in violation of California Penal Code § 647.6). In such circumstances, juries are tasked with evaluating allegations regarding prior, unrelated incidents and, if they find those allegations to be true, determining their relevance as to the charged crime. If juries are deemed competent to consider such evidence, we see no reason why the jury here would not have been competent to understand the proffered cross-examination.

Finally, the trial court was concerned about the prejudice, presumably to Lara, resulting from the cross-examination. Other than as to her credibility, it is not clear how her testimony regarding the prior incidents would prejudice her at all. Although the prior incidents involved sexual conduct or, at least, alleged sexual conduct, Lara did not participate by choice. Any disgust or hostility that jurors might have felt would have been lodged not with Lara, but with Filson and Hendrix. *See LaJoie*, 217 F.3d at 673 (holding that evidence excluded pursuant to a state rape shield law pertaining to the alleged victim's history of being subject to non-consensual sexual abuse was not prejudicial because it was "unlikely" to cause "the jury . . . to draw an unfavorable and unwarranted impression of the alleged victim"). Indeed, if anything, the jurors would have been more likely to sympathize with Lara.

Further, if by "prejudice" the trial court meant embarrassment to Lara, it is not clear how the testimony would be any more embarrassing than Lara's testimony regarding the alleged incident involving Fowler. Such minimal — if any — embarrassment cannot serve as the basis to preclude relevant cross-examination. *See Davis*, 415 U.S. at 319-20 ("Whatever temporary embarrassment might result to [the prosecution witness] or his family by disclosure of his juvenile record . . . is outweighed by [the defendant's] right to probe into the influence of possible bias in the testimony of a crucial identification witness. . . . [T]he State's desire that [the prosecution witness] fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the

right of [the defendant] to seek out the truth in the process of defending himself."). Finally, Fowler's attorney advised the trial court that he would "gently walk" Lara through these incidents, that he would not "try [to] embarrass [Lara] in front of the jury because that will simply alienate [his] client," and, indeed, that he was confident that he could get "the facts to come out . . . without undue pressure or embarrassment to her."

[11] We therefore conclude that the trial court's preclusion of the cross-examination was an objectively unreasonable application of clearly established federal law as determined by the Supreme Court. There can be no doubt that the precluded cross-examination sufficiently bore on Lara's reliability or credibility such that a jury might reasonably have questioned it. Nor were the trial court's concerns about waste of time, confusion and prejudice sufficiently well-founded to justify precluding rather than limiting the cross-examination. Given this, the trial court's implicit determination that precluding the cross-examination was not unreasonable, arbitrary or disproportionate given its concerns was itself objectively unreasonable.

4.

Having determined that Fowler was denied his Sixth Amendment right to cross-examination, we must now decide whether that error was harmless "assuming that the damaging potential of the [precluded] cross-examination [would otherwise have been] fully realized." *Van Arsdall*, 475 U.S. at 684. In a federal habeas proceeding, constitutional error is harmless unless it had " 'substantial and injurious effect or influence in determining the jury's verdict.' " *DePetris* v. *Kuykendall*, 239 F.3d 1057, 1061 (9th Cir. 2001) (quoting *Brecht* v. *Abrahamson*, 507 U.S. 619, 638 (1993). Relevant factors to consider include:

> [1] the importance of the witness' testimony in the prosecution's case, [2] whether the testimony was

cumulative, [3] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [4] the extent of cross-examination otherwise permitted, and, of course, [5] the overall strength of the prosecution's case.

*See Van Arsdall*, 475 U.S. at 684 (listing factors relevant on direct review to whether a violation of a defendant's Sixth Amendment right to cross-examination is harmless beyond a reasonable doubt). We apply each factor in turn.

*First*, the importance of Lara's testimony to the State's case cannot be overstated. Conduct qualifies as annoying or molesting for purposes of California Penal Code § 647.6 only if the conduct "would unhesitatingly disturb or irritate a normal person if directed at that person" and was "motivated by an unnatural or abnormal sexual interest in . . . the alleged child victim[ ]." CALJIC 16.440; *accord People* v. *Lopez*, 965 P.2d 713, 717 (1998). Given that the sexually explicit conversation in which Fowler engaged Lara while driving her to her friend's house was arguably benign and well-intentioned, it was Fowler's application of lotion to Lara that was most likely to constitute annoying or molesting conduct in the eyes of the jury. And it was Lara's version of the event that describes conduct that "would unhesitatingly disturb or irritate a normal person if directed at that person" and that suggests that the conduct was "motivated by an unnatural or abnormal sexual interest in" Lara. *See* CALJIC 16.440; *accord Lopez*, 965 P.2d at 717.

**[12]** Thus, in the absence of any physical evidence of or any third-party witness to the alleged molestation, Lara's testimony was central to the State's case. Indeed, it *was* the State's case and, so, the State's case depended upon the jury believing Lara's testimony. About this there is no serious dispute, the State conceding: "The instant case was primarily a credibility contest between Lara and [Fowler]." This alone strongly supports a finding that the error was not harmless.

*Olden*, 488 U.S. at 232 33 (concluding that the preclusion of cross-examination was not harmless error where the witness that was to have been cross-examined gave testimony that was "central, indeed crucial, to the prosecution's case"); *Davis*, 415 U.S. at 319-20 (holding that the trial court precluded cross-examination in violation of the defendant's Sixth Amendment right to cross-examination where the prosecution witness was "a crucial identification witness" and "[s]erious damage to the strength of the State's case would have been a real possibility had [the defendant] been allowed to pursue this line of inquiry"); *see Wood*, 957 F.2d at 1550 ("A trial court does not abuse its discretion [by limiting cross-examination in violation of the Sixth Amendment] so long as the jury has 'sufficient information' upon which to assess the credibility of witnesses."); *cf. Thomas* v. *Hubbard*, 273 F.3d 1164, 1178 (9th Cir. 2002) ("This court has recognized that 'where a defendant's guilt hinges largely on the testimony of a prosecution's witness, the erroneous exclusion of evidence critical to assessing the credibility of that witness violates the Constitution.' ") (quoting *DePetris*, 239 F.3d at 1062), *overruled on other grounds by Payton* v. *Woodford*, 299 F.3d 815, 829 n.11 (9th Cir. 2002) (en banc); *DePetris*, 239 F.3d at 1062 (same).

*Second*, as noted above, Lara's testimony was not cumulative such that an effective cross-examination would not have undermined the State's case. To the contrary, there was no physical evidence and no third-party witnesses to the alleged incidents. Other than Fowler, Lara was the only person that could and did testify regarding the alleged incidents.

**[13]** *Third*, given this absence of evidence either corroborating Fowler's account or contradicting Lara's account, the proffered cross-examination took on added significance. Absent the proffered cross-examination, the jury was left without a possible explanation for why Lara's account differed so. The proffered cross-examination, however, would have provided a jury with a theory: that since, and perhaps

owing to, the Hendrix incident, Lara is "a little cautious about things" and may misinterpret asexual conduct as inappropriate conduct and may unconsciously exaggerate asexual conduct such that it becomes inappropriate conduct. *Cf. Crane* v. *Kentucky*, 476 U.S. 683, 689-90 (1986) (explaining the importance of providing the jury with an explanation for why two accounts differ).

*Fourth*, the trial court admitted into evidence that Lara had committed theft by shoplifting and, thus, even after precluding the proffered cross-examination, had not eliminated all evidence affecting Lara's reliability or credibility. Nonetheless, whereas the fact that Lara had committed theft by shoplifting undoubtedly bore on Lara's character for truthfulness generally, the proffered cross-examination bore on Lara's reliability and credibility in the specific context before the jury. Thus, the former is qualitatively different from — and does not substitute for — the latter. *See Davis*, 415 U.S. at 316 (distinguishing between "discrediting the witness [by] introduc[ing] evidence of a prior criminal conviction of that witness," by which "the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony," and "[a] more particular attack on the witness' credibility [that] is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand").

*Fifth*, as explained above, the State's case was only as strong as Lara's testimony. Further, what we know of the jury deliberations suggests that even absent the proffered cross-examination, the jury did not consider the State's case to be strong. The jury heard evidence for only two days, but deliberated for four. And during those four days, it requested that certain testimony be read back, then announced that it was deadlocked as to both counts, and, only after being ordered to deliberate further, rendered a verdict as to the count for

annoying or molesting a minor. Even then, the jury remained deadlocked as to the count for sexual battery, as to which a mistrial ultimately was declared.

**[14]** Having applied the factors listed in *Van Arsdall*, we have little trouble concluding that the error here had " 'substantial and injurious effect or influence in determining the jury's verdict.' " *See DePetris*, 239 F.3d at 1061 (quoting *Brecht*, 507 U.S. at 638).)

IV.

The Sixth Amendment's Confrontation Clause " 'comes to us on faded parchment,' . . . with a lineage that traces back to the beginnings of Western legal culture," *Coy* v. *Iowa*, 487 U.S. 1012, 1015 (1988) (quoting *California* v. *Green*, 399 U.S. 149, 174 (1970) (Harlan, J., concurring)), and confers a "bedrock procedural guarantee." *Crawford* v. *Washington*, 541 U.S. 36, 42 (2004). So too, "[t]he right of cross-examination [in particular] is more than a desirable rule of trial procedure." *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973). Rather, it is "essential to a fair trial," *Pointer* v. *Texas*, 380 U.S. 400, 404 (1965), insofar as "[t]he opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process." *Kentucky* v. *Stincer*, 482 U.S. 730, 736 (1987); *accord Chambers*, 410 U.S. at 295 (noting that cross-examination "helps assure the 'accuracy of the truth-determining process' ") (quoting *Dutton* v. *Evans*, 400 U.S. 74, 89 (1970)). This is because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska*, 415 U.S. 308, 316 (1974). Indeed, it has been said that cross-examination is nothing less than the " 'greatest legal engine ever invented for the discovery of truth.' " *Green*, 399 U.S. at 158 (quoting 5 J. Wigmore, *Evidence* § 1367 (3d ed. 1940)); *accord Pointer*, 380 U.S. at 404 (noting "the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case").

**[15]** For the reasons expressed above, we hold that Fowler was denied this venerable and essential right and, further, that the district court erred in holding that the trial court's order precluding cross-examination pertaining to the two prior claims by Lara of molestation was not an unreasonable application of clearly established federal law as determined by the Supreme Court. We therefore reverse and remand with instructions that the district court issue a conditional writ of habeas corpus directing that the State vacate Fowler's conviction unless, within 90 days or as extended by the district court as reasonably necessary, the State begins anew trial proceedings against Fowler. *See Lane* v. *Williams*, 455 U.S. 624, 630-31 & n.10 (1982) (noting as appropriate habeas relief "set[ting] aside [the habeas petitioners'] convictions," which "relief would free [the habeas petitioners] from all consequences flowing from their convictions, as well as subject them to [potential] reconviction with a possibly greater sentence").[10]

**REVERSED and REMANDED.**

---

[10]Because we reverse and remand for issuance of a conditional writ of habeas corpus, we need not reach Fowler's remaining claims.