BERZON, Circuit Judge,
dissenting:
The original panel opinion analyzed Thompson’s habeas petition under Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), the case that both parties assumed was “clearly established Federal law” for purposes of 28 U.S.C. § 2254(d)(1) in this appeal. Only after the respondent (whom I refer to as the “State”) lost in the panel’s original decision did the State first advance the argument that Seibert was not the relevant precedent under § 2254(d)(1). The majority now holds that despite the State’s extraordinary delay in raising that argument, the argument was neither forfeited nor waived. Maj. Op. at 1097-1100. Because the majority misapplies the Supreme Court’s recent decisions on waiver and for *1102 feiture in the habeas context and upends the fundamental principle of civil litigation that litigants are ordinarily expected to raise open questions if they want them decided, I respectfully dissent.
I
I begin by describing the magnitude of the State’s delay before making the about-face in its litigation strategy that the majority now excuses.
A
At the time the State filed its brief in July 2009, this court’s cases contained contradictory statements concerning the time frame for determining “clearly established” law under § 2254(d)(1), reflecting, in turn, conflicting guidance by the Supreme Court. But the issue was an open one, both in the Supreme Court and this court.
In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Court characterized “clearly established Federal law” as measured alternately “at the time [the] state-court conviction became final,” id. at 390, 120 S.Ct. 1495 (majority opinion, Part III, by Justice Stevens), and “as of the time of the relevant state-court decision,” id. at 412, 120 S.Ct. 1495 (majority opinion, Part II, by Justice O’Connor). Later cases noted the contradiction but did not resolve it. See Smith v. Spisak, 558 U.S. 139, 130 S.Ct. 676, 681, 175 L.Ed.2d 595 (2010); see also Bobby v. Dixon, — U.S.-, 132 S.Ct. 26, 31 n. 3, 181 L.Ed.2d 328 (2011) (per curiam); Thaler v. Haynes, 559 U.S. 43, 130 S.Ct. 1171, 1174 n. 2, 175 L.Ed.2d 1003 (2010) (per curiam).
Our cases reflected the Supreme Court’s lack of clarity. For example, Jackson v. Giurbino, 364 F.3d 1002 (9th Cir.2004), stated that “[t]he relevant law must have been clearly established by the time [the petitioner’s] conviction became final in the state courts.” Id. at 1005 (citing Williams, 529 U.S. at 390, 120 S.Ct. 1495). Other cases, including Fowler v. Sacramento County Sheriffs Department, 421 F.3d 1027 (9th Cir.2005), instructed that “ ‘clearly established Federal lav/ ... refers to ... the time of the relevant state-court decision, which is the ‘last reasoned decision’ by the state court.” Id. at 1034 (citations omitted). Yet, although our case law contained such contradictory statements in passing, there was, as far as I can tell, nó case in which the timing issue mattered in determining the applicable Supreme Court precedent.[1] Nor does the State or the majority opinion suggest otherwise.
The State did not argue in its answering brief that the Fowler version of these divergent rules applies. In light of the lack of a controlling precedent in which there was an actual holding on the issue, the State could have argued for its present position. Or it could have maintained that the Fowler rule governed in this case in any event, because Seibert was decided after the last state court ruling (the denial of discretionary review by the California Supreme Court), and no petition for a writ of certiorari had been filed with the United States Supreme Court.
In fact, instead of presenting the argument that Seibert was not the measure of “clearly established Federal law,” or at least raising the issue of this court’s conflicting statements, the State’s initial brief in this court definitively “stated, citing Justice Stevens’ opinion for the Court in Williams ..., that the law to be applied under [the Antiterrorism and Effective *1103 Death Penalty Act (AEDPA)] is that ‘clearly established at the time [Thompson’s] state court conviction became final.’” See Thompson v. Runnels, 657 F.3d 784, 796 n. 7 (9th Cir.2011) (Thompson II), vacated sub nom. McEwen v. Thompson, — U.S. -, 132 S.Ct. 578, 181 L.Ed.2d 418 (2011). The original dissent recognized that the State did not “argu[e] that Seibert was not ‘clearly established’ Supreme Court precedent relevant to Thompson’s claim under AEDPA.” Thompson v. Runnel, 621 F.3d 1007, 1023 n. 1 (9th Cir.2010) (Thompson I) (Ikuta, J., dissenting), withdrawn and superseded by Thompson II, 657 F.3d 784. And the State so noted in its Petition for Rehearing with Suggestion for Rehearing En Banc, stating: “We acknowledged ... at oral argument we did not raise this issue.” See Thompson II, 657 F.3d at 796 n. 7. In light of the State’s failure to argue to the contrary, the original majority decision appropriately held that as in Smith v. Spi-sak, because “the parties had not raised the issue,” it was “not properly before us.” Thompson I, 621 F.3d at 1015 n. 7; Thompson II, 657 F.3d at 796 n. 7.
B
Under our case law, an appellee who fails to raise an issue in an answering brief forfeits it. Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir.2009). The circumstances described above are therefore enough to establish that the State forfeited the argument.
But the State did more than just that. It accepted the petitioner’s argument that Seibert was the relevant precedent, and then erected its own argument on that understanding, maintaining that Thompson should have exhausted his Seibert argument in the state courts before coming to federal court. See Thompson I, 621 F.3d at 1013.[2] Specifically, the State argued that “ ‘[t]he threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final,’ ” (quoting Williams, 529 U.S. at 390, 120 S.Ct. 1495) (emphasis added), and then argued that because Thompson “never fairly presented to the state courts the issue of deliberate police action under Seibert,” Thompson’s petition was “unexhausted.” Greene resolved an issue distinct from exhaustion, namely whether a Supreme Court case decided after the last-reasoned state court decision on the merits is “clearly established Federal law” under § 2254(d)(1), see 132 S.Ct. 38, regardless of what arguments were “fairly presented” in state court, see Thompson II, 657 F.3d at 794-95.
The majority’s attempt to equate the argument that the State actually made and the argument that the State forfeited but that the majority now reaches is thus unconvincing. See Maj. Op. at 1100 n. 6. Instead, by making its exhaustion argument while accepting that for § 2254(d)(1) purposes law is clearly established when the conviction becomes final, the State “deliberately steered” the panel away from the question on which the majority now rests its opinion. See Wood v. Milyard, — U.S. -, 132 S.Ct. 1826, 1835, 182 L.Ed.2d 733 (2012).
C
The State’s other litigation choices further underscore the extent to which the State steered this court away from any argument that Seibert was not the relevant precedent against which to measure the last reasoned state-court decision. At the *1104 February 10, 2010 argument, the following exchange transpired:
Judge Ikuta: Is the State waiving the argument that Missouri v. Seibert was not clearly established at the time the state court rendered the decision? Because the State does have the power to waive that, and we would apply Missouri v. Seibert to the state court’s decision. So are you waiving that argument?
Counsel: Well, I have to admit, Your Honor, we did not raise it, so—
Judge Ikuta: Are you waiving it on behalf of the State?
Counsel: I don’t feel I’m in the position to waive it on behalf of the State, but I have to acknowledge, as [Judge] Berzon pointed out, that we did not raise that in our briefs, so—
Judge Berzon: And you more than didn’t raise it. You assumed its nonexistence.
Counsel: I think that’s correct, Your Honor. But in terms of the Statefs] position, I can’t stand here and say that the state is waiving that argument.
Notwithstanding the State’s refusal at oral argument affirmatively to state that it was “waiving” the argument, the Supreme Court’s recent decision in Wood v. Milyard, — U.S. , 132 S.Ct. 1826, 182 L.Ed.2d 733 (2012), confirms that by its actions, the State did waive the position it now espouses. By the time oral argument concluded, the State’s forfeiture—or failure to preserve its argument—had become a waiver—that is, a knowing and intelligent relinquishment of the argument. See id. at 1832 n. 4.
In Wood, the Court construed as a “waiver” a similar representation by the offiee of the Attorney General of Colorado in a § 2254 habeas case. In that case, the district court instructed the “State [of Colorado] to file a preanswer response ... ‘addressing the affirmative defense[] of timeliness.’ ” Id. at 1830 (internal citation omitted). The State responded: “Respondents will not challenge, but are not conceding, the timeliness of ... [the] habeas petition.” Id. (internal quotation marks omitted). “Consistently, in its full answer to [the] ... petition, the State repeated: ‘Respondents are not challenging, but do not concede, the timeliness of the petition.’ ” Id. at 1830-31. After the district court dismissed the habeas petition on grounds other than timeliness, the Court of Appeals for the Tenth Circuit ordered the parties to the appeal to brief the timeliness issue. Id. at 1831. The Supreme Court reversed, explaining that the State had waived the timeliness argument, and that the Tenth Circuit abused its discretion by dismissing the petition on that procedural ground despite the State’s waiver. Id. at 1834.[3]
Most relevant here is that despite Colorado’s repeated mantra that it was not “conced[ing]” its timeliness argument, Wood construed its response as a waiver. The Court characterized the State’s responses to the district court’s briefing order as “deliberately steer[ing]” that court “away from the question,” rather than as “inadvertent error.” Id. at 1835 (quotation marks omitted). “In short, the State knew it had an ‘arguable’ statute of limitations defense, yet it chose, in no uncertain terms, to refrain from interposing [such a] challenge.” Id. at 1835 (internal citation and quotation marks omitted). Colorado had therefore waived, that is “intention *1105 al[ly] relinquished] or abandoned],” “a known right.” Id. at 1835.
The circumstances here were, if anything, more indicative of a waiver than those in Wood. The State made an earlier decision not to brief, and therefore “not to contest,” Thompson’s position as to the time at which clearly established law was to be measured. See id. at 1835. Instead, it quoted in its brief the contrary rule to the one for which it now argues and constructed an argument assuming that rule. In the face of questioning from this court, the State acknowledged that briefing position and, after hearing that there might be a contrary plausible position, did not backtrack from its earlier assumption, stating that it was “correct” that it had briefed the case on the understanding that Seibert was clearly established federal law at the relevant time. Analogously to Wood, at least by the time of the oral argument, “the State knew it had an ‘arguable’ [clearly established Federal law] defense, yet it chose, in no uncertain terms, to refrain from interposing [such] a ‘challenge,’ ” see Wood, 132 S.Ct. at 1835, then or after-wards, until after it had lost in the original panel opinion, see infra Section I.D. As the Seventh Circuit has held, where a government attorney “learn[s] at oral argument that there was a potential procedural argument, [and] then inform[s] the court that the argument was not being asserted,” under Wood, “[w]hy a litigant comes to such a decision is irrelevant, and a mistake in reaching a decision to withhold a known defense does not make that decision less a waiver.” Ryan v. United States, 688 F.3d 845, 848 (7th Cir.2012).
In short, Wood and Ryan make plain the State’s waiver here.
D
Not until after the panel issued its original opinion, with the dissent taking the view that “clearly established Federal law” referred to “the time of the relevant state-court decision,” Thompson I, 621 F.3d at 1023 (Ikuta, J., dissenting), did the State in its petition for rehearing en banc finally raise the issue on which the majority’s new decision turns—-namely how to determine which Supreme Court precedent constitutes “clearly established Federal law” under AEDPA, see Thompson II, 657 F.3d at 796 n. 7.[4] Our cases make crystal clear that the government—like any other litigant—is not entitled to raise an entirely new issue for the first time in a petition for rehearing. See Fields v. Palmdale Sch. Dist., 447 F.3d 1187, 1190 (9th Cir.2006).
The majority nevertheless contends that despite the State’s decision to wait until its petition for rehearing en banc to argue that Seibert was not the measure of clearly established federal law, we should now disregard Seibert. See Maj. Op. at 1097-1100. But nowhere does the majority account for the State’s egregious delay in making that argument, nor does the majority explain why the State should benefit from the fortuitous timing of the Supreme Court’s decision to grant certiorari in Greene while the State’s petition for rehearing en banc was pending.
The majority’s decision to excuse the State’s waiver might be more tenable if our practice were to bend over backwards to make the same concessions for habeas *1106 petitioners. But the trajectory of federal habeas law in the past decades has been a series of “ceaselessly changing and ever expanding series of rules,” with which “all but the most unusual of petitioners” are deemed noncompliant. Leavitt v. Arave, 682 F.3d 1138, 1142 (9th Cir.2012) (Reinhardt, J., concurring). For example, in Butler v. Curry, 528 F.3d 624, 642 (9th Cir.2008), a habeas petitioner was held to have forfeited the argument that the state court’s interpretation of state law was erroneous “by failing to raise it either in the district court or in his brief on appeal, mentioning it for the first time at oral argument.” Similarly, the habeas petitioner in Robinson v. Kramer, 588 F.3d 1212, 1218 (9th Cir.2009), forfeited claims raised in state habeas petitions and in the district court by not renewing them on appeal.
The Supreme Court has instructed us that federal judges “have no obligation to act as counsel or paralegal to pro se litigants,” by advising how to exhaust and avoid procedural default, and that “by the same token, [judges] surely have no obligation to assist attorneys representing the State.” Day v. McDonough, 547 U.S. 198, 210, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (internal citation and quotation marks omitted). We lose credibility as an impartial arbiter of habeas cases when we discard the “ordinar[ ]y” rules of “civil litigation” to save governmental parties from their own litigation choices. Wood, 132 S.Ct. at 1832. States are entitled to a great degree of deference under AEDPA, but not when they confound federal courts’ ability to adjudicate cases according to the “principle of party presentation basic to our adversary system.” Id. at 1833. Entertaining an argument raised for the first time on a petition for rehearing is no way for a court to handle litigation with any degree of efficiency or regard for fairness to the parties.
There are also considerations of judicial self-governance and efficient, effective de-cisionmaking compromised by the majority’s refusal to hold the State to its litigation choices. As a practical matter, “we rely on the parties to frame the issues for decision,” as “our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.” Greenlaw v. United States, 554 U.S. 237, 243-44, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (internal quotation marks and citation omitted). Sometimes, however, we discover that the parties are so mistaken in their legal assumptions—whether due to faulty research or illogical analysis—that we cannot and do not proceed on an erroneous basis. See id. at 262-64 (Alito, J., dissenting) (collecting cases). Where, however, (1) the legal question is a debatable one; (2) the pertinent party is so apprised by the court and specifically asked at argument whether it wishes to alter its position; and (3) the party instead sticks to a position incompatible with the one it later adopts, the court cannot sensibly decide the question the party has declined to advance. To do so simply multiplies the court’s work, requiring it to (1) decide the question the party does present; and then (2) decide the other question the party refused to address, necessitating entirely new research and analysis. The alternative of waiting to see whether the issue is finally raised in a petition for rehearing is even worse: We rehear cases when the court has made a mistake, not when a party has made a mistake.
Nor does the fact that the case is before the court on the Supreme Court’s grant of certiorari, vacatur, and remand (GVR) change the approach appropriate here. The Supreme Court’s only instruction to this court was that the case be considered further “in light of Greene v. Fisher.” See McEwen v. Thompson, — U.S.-, 132 *1107 S.Ct. 578, 181 L.Ed.2d 418 (2011) (citing Greene, — U.S. -, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011)). A GVR order does not represent any conclusion that a new case is determinative, only that it is “potentially relevant.” Stutson v. United States, 516 U.S. 193, 197, 116 S.Ct. 600, 133 L.Ed.2d 571 (1996) (per curiam); see Lawrence v. Chater, 516 U.S. 163, 116 S.Ct. 611, 133 L.Ed.2d 545 (1996) (per curiam). The State’s waiver of the argument that Seibert was not “clearly established Federal law” is ample reason that Greene does not control here.
II
The majority’s decision to endorse the State’s eleventh-hour about-face regarding its litigation strategy leads to one of two possibilities for how habeas litigation will now proceed. The first is that we will ourselves be responsible for coming up with all the Supreme Court precedents possibly relevant to determining whether a state court’s decision was an unreasonable application of clearly established Supreme Court precedent, no matter how the parties have framed their arguments. The second is that we will let the parties change their litigation strategies at any time, including after briefing is completed, after oral argument has taken place, and after the panel renders its decision. Each of these approaches is supremely inefficient and disregards basic precepts of our adversarial system. The court’s fair and efficient functioning depends on the “principle of party presentation basic to our adversary system.” Wood, 132 S.Ct. at 1833. And impartiality demands that “we should be no less vigorous in applying ... against the government” the rule that arguments not raised on appeal are forfeited than we are in applying that rule “against criminal defendants.” United States v. Ziegler, 497 F.3d 890, 901 (9th Cir.2007) (Kozinski, J., dissenting from the denial of rehearing en banc).
Because I would analyze the merits of Thompson’s Miranda claim under the Supreme Court’s decision in Seibert, I would conclude, for the reasons given in the original panel opinion, that the California Court of Appeal applied a rule contrary to “clearly established Federal law,” and, that, applying Seibert de novo, Thompson’s confession was inadmissible. See Thompson II, 657 F.3d at 796-801. I therefore respectfully dissent from the majority’s decision to allow the State’s switch in time to triumph, and would grant Thompson’s ha-beas petition.[5]

. The Second Circuit also noted the Supreme Court’s “inconsistent guidance” on the timing issue in a case in which it did "not matter which formulation applie[d].” See Brown v. Greiner, 409 F.3d 523, 533 n. 3 (2d Cir.2005).

. The original opinion rejected the State's exhaustion argument on its merits. See Thompson I, 621 F.3d at 1013.

. The majority makes no effort to address Wood's holding regarding under what circumstances a party’s litigation decisions result in a waiver, and instead endeavors to distinguish Wood as a case regarding an “affirmative defense.” See Maj. Op. at 1099 & n. 4 (emphasis added). Wood cannot be so narrowly construed. See Wood, 132 S.Ct. at 1832 n. 4 (discussing waiver of both ‘‘claim[s]" and “defensefs]”).

. Because the State did not raise its "clearly established Federal law” argument in its answering brief, and instead waited until the panel issued its decision to make the argument for the first time in its petition for rehearing en banc, the cases the majority cites for the proposition that under certain circumstances we may consider arguments raised by the parties in their briefs on appeal even if not raised in lower court proceedings, see Maj. Op. at 1098, 1098-99 & n. 2, are inapposite.

. Because I would grant Thompson’s habeas petition, I need not reach his alternate argument that we should stay his federal habeas proceedings pending any further state court proceedings. See Maj. Op. at 1100-01. Nonetheless, if I were to hold—notwithstanding the State’s multiple waivers—that Elstad is the relevant "clearly established Federal law” for purposes of Thompson’s case in its current posture, I would remand to the district court with instructions to stay proceedings to permit Thompson to present his Seibert argument in a petition for state postconviction relief. See Rhines v. Weber, 544 U.S. 269, 278, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005); Gonzalez v. Wong, 667 F.3d 965, 972, 980 (9th Cir.2011), cert. denied, - U.S. -, 133 S.Ct. 155, 184 L.Ed.2d 234 (2012). As I have explained, the measure of "clearly established Federal law” was only recently resolved, see Greene, 132 S.Ct. 38, and the State accepted until its petition for rehearing that Seibert was the relevant precedent for deciding Thompson’s petition, asserting in its brief a rule for determining the timing of clearly established Supreme Court law contrary to the one adopted in Greene. Under the unique circumstances of this case, then, Thompson had "good cause” for not pursuing state postcon-viction remedies earlier, and "has not engaged in intentional dilatory litigation tactics.” Gonzalez, 667 F.3d at 980; see *1108 Rhines, 544 U.S. at 278, 125 S.Ct. 1528. And in my view, for the reasons stated in the original opinion, see Thompson II, 657 F.3d at 796-801, Thompson has a “meritorious” Seibert claim, see Rhines, 544 U.S. at 278, 125 S.Ct. 1528; Gonzalez, 667 F.3d at 980. The majority therefore abuses its discretion by denying a stay and effectively foreclosing any further federal review of Thompson's claim. See Rhines, 544 U.S. at 278, 125 S.Ct. 1528.